# MARCH, 1907.

## Missouri, Kansas & Texas Railway Company of Texas v. O. K. Shannon, Secretary of State et al.

### No. 1657. Decided March 1, 1907.

**1.—Jurisdiction—Suit Against State—Injoining Assessment of Taxes.**

The District Court had jurisdiction in a suit to enjoin the State Tax Board from assessing the property of a railway company under the "Intangible Assets Act" (Act of April 17, 1905) if such law was unconstitutional, and the proceeding enjoined would subject the complainant to a multiplicity of suits. Stephens v. Texas & Pac. Ry. Co., 100 Texas, 177. (Pp. 387, 388.)

**2.—Injunction—Acts Already Performed.**

Injunction may be maintained against proceedings of officers of the State ·to assess and enforce taxes levied by an unconstitutional law, where relief is sought against all future proceedings thereunder, though action by such officers, with reference to the tax for the current year, had been taken before jurisdiction issued. (P. 388.)

**3.—Department of Government—Judicial Power.**

Under the division of the powers of government made by the Constitution of Texas (art. 2, sec. 1) judicial or legislative powers can not be conferred upon the executive officers, such as the Secretary of State or Comptroller; but the act of an executive officer, in passing upon facts and determining his action by the facts found, though sometimes termed quasijudicial, is not a judicial act within the meaning of such restriction. Arnold v. State, 71 Texas, 239, followed. (Pp. 388, 389.)

**4.—Constitution—Intangible Assets—County Assessor.**

The Act of April.17, 1905, requiring the valuation of the "intangible assets" of·the railway companies by a State Tax Board is not in contravention of article 8, sections 8, 11 and 14, of the State Constitution, requiring railroad property to be assessed by ţhe county assessor of the county where it is situated; the intangible values of such property have no situs in the various counties; they can only be valued as attaching to its property as a whole, and constitute one of the "other subjects" of taxation, not enumerated in the Constitution, for the taxation of which the Legislature is authorized to provide by article 12, section 17, of the Constitution. (Pp. 389–391.)

**5.—Same.**

While it seems intended by the Constitution that all ordinary assessments of property for taxation should be made by the county assessor, it was not intended by article 8, section 14, to deprive the Legislature of the power to devolve the duty on other officers in special cases where, as in this, the county assessors were clearly unable to value the intangible assets as a whole, or intelligently apportion the valuation among the various counties. The Legislature was authorized to provide a mode of ascertaining such value by the requirement of article 8, section 1, of the Constitution, that taxation should be equal and uniform. (Pp. 391, 392.)

**6.—Taxation—Equality.**

The equality of taxation required by article 8, section 14, of the Constitution, · is secured in the case of the "Intangible Assets Act" by the fact that the property, when valued, is subject to the precise burden imposed by other laws on other property. (P. 392.)

**7.—Taxation—Uniformity.**

The provision that taxation should be "uniform" (Const., art. 8, sec. 14) does not require that the same method of ascertaining the value of the property for taxation should be adopted in all cases. (Pp. 392–394.)

**8.—Assessment—Standard of Value—Stocks and Bonds—Arbitrary Valuation.**

The "Intangible Assets Act" does not violate the provisions of the State Constitution as to due process of law, or of the fourteenth amendment to the Federal Constitution, in adopting as a basis of valuation of a railway company the market value of its stocks and bonds. Such basis is not arbitrary, but a reasonable one for arriving at a prima facie valuation of the property as a whole; and, if unjust in any particular case, rights are guarded by requiring the board to hear evidence as to that fact. (Pp. 394, 395.)

**9.—Taxation—Exemption—Discrimination.**

The exempting - of sleeping, dining and palace–car companies, and others, from the operation of the "Intangible Assets Act," was not an unlawful discrimination against the companies included. It was for the Legislature to determine the classes for which such method of valuation was necessary; and, though a reason for this discrimination be not obvious to the courts, it is for those attacking the law to allege and prove facts showing the discrimination unjust. (Pp. 395, 396.)

**10.—Assessment—Discrimination—Presumption.**

It will be presumed that county assessors will obey the law, and assess other property at its true value, and that no discrimination will result from a law securing the assessment of railroad property at its true value through a state board. (P. 396.)

**11.—Tax on Gross Income—Suspension of Law.**

Section 12 of the "Intangible Assets Act" (Laws 1905, p. 356), exempting companies which have complied with its terms from the operation of the law taxing railway companies upon their gross receipts (Laws 1905), p. 338, was not unconstitutional as giving to the companies the power of suspending the latter law at their election (Const., art. 1, sec. 28). (Pp. 396, 397.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

The railway company brought the suit against Shannon and others constituting the State Tax Board to restrain proceedings for taxing its property. Judgment was for defendants and was affirmed on appeal by plaintiff, which then obtained writ of error.

*T. S. Miller, H. M. Garwood, E. B. Perkins* and *N. A. Stedman,* for plaintiff in error.—Where the State Constitution provides for the election of an assessor of taxes and does not confer upon the Legislature any authority to limit the powers or prescribe the duties of such assessor of taxes, and such powers and duties were well known, understood and established at the time of the adoption of such Constitution, then the Legislature of the State has no power of authority to transfer the powers and duties which had theretofore been ordinarily exercised by an assessor of taxes to another officer or tribunal. Const., State of Texas, sec. 14, art. 8; Galveston, H. & S. A. Ry. Co. v. Davidson, recently decided by the Court of Civil Appeals, Third District; State v. Moore, 57 Texas, 307; State v. International & G. N. Ry. Co., 89 Texas, 566; Harris County v. Stewart, 91 Texas, 146; People v. Lathrop, 3 Colo., 463; Williams v. State, 12 Texas Crim. App., 395;

Calder v. Bull, 3 Dall., 386; State v. Tonella, 70 Miss., 701; Houghton v. Austin, 47 Cal., 646.

Where the State Constitution expressly provides that the County Commissioners' Court shall constitute a board of equalization and authorizes the Legislature to provide for the equalizing of the valuation of property, subject to or rendered for taxation, by said court, then the Legislature has no power or authority to authorize any other officer or tribunal to fix and determine the value of any property for taxation. Const., State of Texas, art. 5, sec. 18, art. 8, sec. 18; Willis v. Owens, 43 Texas, 51; State v. Tonella, 70 Miss., 701; Houghton v. Austin, 47 Cal., 646; Assessment Board v. Alabama Cent. Ry. Co., 59 Ala., 557; same authorities as under preceding proposition.

It was the purpose and intent of the Constitution to preserve the theory of local assessment and valuation of all properties for taxation, and to fix and establish the various counties of the State as the municipal districts for state and county taxation, and this being true, the Legislature has no authority to provide for the assessment of property by any other than local officials, or to provide for any method of fixing and establishing the value of property for taxation by any other official or tribunal than such local officers. Const. of Texas, art. 8, secs. 1, 5, 8, 11, 12, 14, 16, 18; People v. Lathrop, 3 Colo., 463; State v. Tonella, 70 Miss., 701; Houghton v. Austin, 47 Cal., 646; Welty on Assess., sec. 10.

Where the State Constitution provides that taxation shall be equal and uniform, it means that the entire process of taking up contributions from the various subjects of taxation within the State, and the result thereof, must be equal and uniform. County of Galveston v. Galveston Gas Co., 72 Texas, 515; Texas Banking and Ins. Co. v. State, 42 Texas, 639; Higgins v. Bordages, 88 Texas, 458; Hardesty Bros. v. Fleming, 57 Texas, 395; City of Austin v. Austin Gas Co., 69 Texas, 180; Llano Cattle Co. v. Faught, 69 Texas, 402; Clegg v. State, 42 Texas, 608; Texas, B. & I. Co. v. State; 42 Texas, 639; Norris v. City of Waco, 57 Texas, 635; Assessment Board v. Alabama Cent. Ry., 59 Ala., 551; Cummings v. Merchant's Nat. Bank, 101 U. S., 153; Knowlton v. Supervisors of Park Co., 9 Wis., 410; Attorney-General v. Winnebago L. & F. P. Co., 11 Wis., 35; In re Assessment and Collection of Taxes, 54 N. W. Rep., 818; Taylor v. Louisville & N. Ry. Co., 88 Fed. Rep.; 350; Railroad and Tel. Co. v. Tennessee, 85 Fed. Rep., 302; Chicago Trac. Co. v. State Board, 114 Fed. Rep., 558; Amoskeag v. Manchester, 46 Atl. Rep., 470; 5 Pomeroy's Eq. (3d ed.), sec. 371.

Under the Constitution of Texas, which provides for the election of assessors of. taxes and boards of equalization in the various counties, it is not competent for the State Legislature or any agency created by the Legislature to prescribe and establish fixed or arbitrary rules, or, indeed, any rules, for the valuation of property for taxation. Const., State of Texas, art. 8, sec. 1; Assessment Board v. Alabama Cent. Ry. Co., 59 Ala., 557; 2 Cooley on Tax., 1466; Borroughs on Tax., 228; Union Trac. Co. v. State Board, 114 Fed. Rep., 556; Welty on Assessments, secs. 10, 20, 25, 158; same authorities as under first preceding proposition.

The right to suspend the operation of a law of the State can be ex-

ercised only by the Legislature, and any Act of the Legislature authorizing any other party or parties to suspend the operation of the law is void. Const., State of Texas, art. 1, sec. 28; Jannin v. State, 51 S. W. Rep., 1126; Texas & P. Ry. Co. v. Mahaffey, 84 S. W. Rep., 646.

Where a Tax Act of the Legislature provides for the assessment and collection of taxes on a certain class of property owners whereby certain. elements of value in their property will be required to pay taxes. when no provision is made for taxing such elements of value in other property, then this is the taking of the property of that class of persons without due process of law. Const., State of Texas, art. 1. secs. 17, 19; McFadden v. Longham, 58 Texas, 579; Pullman Pal. Car Co. v. State, 64 Texas, 279; 14th amend. Const. U. S., sec. 1; San Mateo v. Southern Pac. Ry. Co., 13 Fed. Rep., 727; Santa Clara v. Southern Pac. Ry. Co., 18 Fed. Rep., 385; Chicago U. Trac. Co. v. State Board, 114 Fed. Rep., 556.

Where an Act of the Legislature attempts to authorize the Secretary of State or the Comptroller of Public Accounts to exercise powers or authorities which are not executive, such act is void. Const., State of Texas, art. 2, sec. 1; Const., State of Texas, art. 4, sec. 1; Willis v. Owen, 43 Texas, 51; Houghton v. Austin, 47 Cal.; 646.

Where an Act of the Legislature provides a method by which the property of any class of taxpayers must necessarily be assessed at a greater proportion of its value than that at which other property in the State is assessed for taxation, such Act of the Legislature is void, as in contravention of article 8, section 1 of the Constitution of the State of Texas, providing that taxation shall be equal and uniform, and in contravention of section 1 of the fourteenth amendment to the Constitution of the United States in that it denies to defendant the equal protection of the law, and deprives it of its property without due process of law. Const., State of Texas, art. 8, sec. 1; Fourteenth Amend. Const., sec. 1; Hoefling v. San Antonio, 85 Texas, 228; Cummings v. Merchant's Nat. Bank, 101 U. S., 153; County of Santa Clara v. Southern Pac. Ry. Co., 18 Fed. Rep., 385; County of San Mateo v. Southern Pac. Ry. Co., 13 Fed. Rep., 727; Taylor v. Louisville & N. Ry. Co., 88 Fed. Rep., 350; Chicago U. Trac. Co. v. State Board, 114 Fed. Rep., 556; Assessment Board v. Alabama Cent. Ry. Co., 59 Ala., 557; Knowlton v. Supervisors, 9 Wis., 410; Attorney-General v. Winnebago L. & G. P. Co., 11 Wis., 35; In re Assessment and Collection of Taxes, 54 N. W. Rep., 818.

. Under the laws heretofore enacted and enforced, providing for the taxation and collection of ad valorem taxes, all the value appertaining to any physical property is considered in making the assessment, and any Act of the Legislature which provides for the ascertainment of the value and the taxation of such value of any of the privileges or rights appertaining to such property, provides for double taxation, and is therefore void. Cassiano v. Ursuline Acad., 64 Texas, 676; Austin & N. W. Ry. Co. v. State, 94 Texas, 530.

Under the provisions of the Intangible Assets Act, in determining the value of the intangible property, there is necessarily included as a part of the value of the socalled intangible property a part of the value of the physical property of railroad companies, and therefore to the ex-

tent that the value of the physical property is so included it is double
taxation and unequal and ununiform and in violation of section 1 of
article 8 of the Constitution of Texas; and of section 1 of the four-
teenth amendment to the Constitution of the United States. Const.,
State of Texas, art. 8, secs. 1, 18; 14th Amend. Const. U. S., sec. 1;
State v. Austin & N. W. Ry. Co., 94 Texas, 530; Meerscheidt v. Southern
Tel. & Telephone Co., 65 S. W. Rep., 381; Rosenberg v. Weeks, 67
Texas, 578; County of Galveston v. Gas Company, 72 Texas, 515;
Davis v. Burnett, 77 Texas, 4; Taylor v. Louisville & N. Ry. Co., 88
Fed. Rep., 350; Cummings v. Merchant's Nat. Bank, 101 U. S., 153;
Welty on Assess., secs. 10, 20, 25, 158; 2 Cooley on Tax., 1382.

Said Act, in providing for deduction of assessed value of physical
properties for the year 1905 from the entire value for the year 1906,
for the ascertainment of the value of the intangible assets for the year
1906, prescribes an arbitrary, capricious and artificial rule of valuation,
in violation of section 1, article 8 of the Constitution of the State of
Texas, and of section 19 of article 1 of the Constitution of Texas, and
of section 1 of the fourteenth amendment to the Constitution of the
United States. Const. of the State of Texas, art. 8, sec. 1, and art. 1,
sec. 19; 14th amend. Const. U. S., sec. 1; Assessment Board v. Alabama
Cent. Ry. Co., 59 Ala., 551; Chicago U. Trac. Co. v. State Board,
114 Fed. Rep., 556; Cotton Exchange v. Tax Board, 37 La. Ann., 426;
Smith v. Ames, 169 U. S., 466; Dent v. West Virginia, 129 U. S., 114;
Cooley's Const. Lim., pp. 429, et seq.

The method of ascertaining the value of the properties of persons
subject to the Act, prescribed in said Act, is so radically different from
the mode and method prescribed for ascertaining the value of the
properties of other persons in this State, that it is, and its enforcement
will necessarily result in an arbitrary, capricious and unwarranted
discrimination against those persons subject to the Act, having no
just or logical relation to the kind and character of the properties
mentioned in said Act whereby same could be distinguished from the
properties of other taxpayers in this State, and is therefore unequal
and ununiform, and contrary to the provisions of section 1, article 8
of the Constitution of the State of Texas, and to section 1 of the
fourteenth amendment to the Constitution of the United States. Const.
State of Texas, art. 8, secs. 1, 5, 8, 11, 12, 14, 16, 18; art. 1, sec. 19;
14th amend. Const. U. S., sec. 1; Cummings v. Merchant's Nat. Bank,
101 U. S., 153; Knowlton v. Supervisors, 9 Wis., 410; Attorney-General
v. Winnebago L. & F. Co., 11 Wis., 35; In re Assessment and Collec-
tion of Taxes, 54 N. W. Rep., 818; Willis v. Owens, 43 Texas, 51;
State v. Tonella, 70 Miss., 101; Houghton v. Austin, 47 Cal., 646;
Welty on Assess., sec. 10.

The Intangible Assets Act prescribes a method for the determination
of the value of what is in said Act designated as the intangible assets
of the companies, corporations and associations therein mentioned, but
does not prescribe the method for the determination of the assets of
other companies, corporations and associations similarly situated and
having assets of the kind in said Act defined, nor does any other law
prescribe the same method or any similar method for the determination
of the value of the intangible assets of companies, corporations and

associations and which are similarly situated and having property of the same kind defined in said Intangible Assets Act; and therefore said Act discriminates against the companies, corporations and associations therein enumerated, in violation of section ·1 of article 8 of the Constitution of Texas, section 19 of article 1 of the Constitution of the State of Texas, section 3 of article 8 of the Constitution of Texas and section 1 of the Fourteenth Amendment to the Constitution of the United States. Const., State of Texas, art. 8, secs. 1, 19; 14th Amend. Const. U. S., sec. 1; Pullman Co. v. State, 64 Texas, 274; Hoefling v. San Antonio, 85 Texas, 228; Poteet v. State, 53 S. W. Rep., 869; Estate of Cope, 191 Pa., 1; Cummings v. Bank, 101 U. S., 153; Knowlton v. Supervisors, 9 Wis., 410; Attorney-General v. Winnebago L. & F. Co., 11 Wis., 35; In re Assessment of Taxes, 54 N. W. Rep., 818; Russell v. Croy, 164 Mo., 69; Santa Clara County v. Southern Pac. Ry. Co., 18 Fed. Rep., 385; San Mateo County v. Southern Pac. Ry. Co., 13 Fed. Rep., 727.

The Act expressly exempts sleeping car, dining car and palace car companies, and fails to include other companies, corporations and associations, possessing equally with those taxed under said Act, intangible properties and franchises. Said Act therefore operates to exempt from taxation the intangible properties and franchises of those companies, corporations and associations not included within its terms, and is void. Const., art. 8, sec. 2.

A court of equity will restrain the collection of an illegal tax where the plaintiff has no adequate remedy at law, or where such restraint is necessary in order to prevent a multiplicity of suits. Blessing v. City of Galveston, 42 Texas, 654; George v. Dean, 47 Texas, 73; Court v. O'Connor, 65 Texas, 334; Morris v. Cummings, 91 Texas, 621; City of Fort Worth v. Davis, 57 Texas, 226; Fargo v. Hart, 193 U. S., 490; State R. R. Tax Cases, 92 U. S., 575; Indiana Mfg. Co. v. Koehne, 188 U. S., 681; Union Pac. Ry. Co. v. Alexander, 113 Fed. Rep., 347.

Where a tax sought to be collected is not only illegal, but is wholly unauthorized, an injunction to restrain its collection will be granted notwithstanding there may be an adequate remedy at law. Lum v. City of Bowie, 18 S. W. Rep., 142; Davis v. Burnett, 77 Texas, 3; Johnson v. Holland, 43 S. W. Rep., 71; Mann v. State, 46 S. W. Rep., 652; Sumner v. Crawford, 91 Texas, 129; Court v. O'Connor, 65 Texas, 334; Lebanon v. Ohio & M. Ry. Co., 77 Ill., 541; Kimball v. Merchant's Sav., Loan & Trust Co., 89 Ill., 611; Appeal of O'Conners, 103 Pa. St., 356; Harper's Appeal, 109 Pa. St., 9.

The appellant was entitled to the injunction prayed for to prevent the assessment of its property by the State Tax Board, and to prevent the report and certification by said State Tax Board of what is denominated its intangible property and the value thereof to local assessing officers. Galveston, H. & S. A. Ry. Co. v. Davidson, decided by the Court of Civil Appeals, Third Supreme Judicial District, March 21, 1906, not yet reported; Coulter v. Weir, 127 Fed. Rep., 907.

*R.. V. Davidson,* Attorney-General, *I. Lovenberg, Jr.,* and *Claude Pollard,* Assistants, for defendants in error.—This is a suit against the

State of Texas and, therefore, the court erred in overruling appellees' exception to the jurisdiction of the court. Upon question of suit against the State: In re Ayers, 123 U. S., 443; Poindexter v. Greenhow, 114 U. S., 270; Allen v. Baltimore & O. Ry. Co., 114 U. S., 311; Pennoyer v. McConnaughty, 140 U. S., 1; In re Tyler, 149 U. S., 164; Reagan v. Farmers' L. & T. Co., 154 U. S., 362; Scott v. Donald, 165 U. S., 58; Smyth v. Ames, 169 U. S., 466; Fitts v. McGhee, 172 U. S., 516; Gregg v. Sanford, 65 Fed., 151; Coulter v. Weir, 127 Fed., 897; Coulter v. Louisville & N. Ry. Co., 196 U. S., 608; Taylor v. Louisville & N. Ry. Co., 88 Fed., 350. Upon the question of lien: Jodon v. City of Brenham, 57 Texas, 655; Scogin v. Perry, 32 Texas, 22; Meriweather v. Garrett, 102 U. S., 472; Cooley on Tax., p. 865; 2 Desty on Tax., sec. 128; Binkert v. Wabash Ry. Co., 98 Ill., 216.

The court below could not, consistently with the public interest, or without embarrassment of the State, have considered and determined the validity of the Act. Blessing v. City of Galveston, 42 Texas, 652; Blanc v. Meyer, 59 Texas, 90; State R. R. Tax Cases, 92 U. S., 616; 16 Am. and Eng. Ency. of Law, 363; Cooley on Tax., 1422; Western Railroad v. Nolan, 48 N. Y., 519; North Carolina Ry. Co. v. Comrs. of Alamance, 82 N. C., 259; Miller v. Grandy, 13 Mich., 540.

Appellant has a complete, speedy and adequate remedy at law. Rev. Stats., arts. 5099, 5120, 5123; Houston & T. C. Ry. Co. v. County of Presidio, 53 Texas, 518; Chisholm v. Adams, 71 Texas, 679.

Appellant's application for an injunction is premature. It is based upon fears and not facts. "Courts deal with things as they are and do not determine rights upon mere possibilities." Houston & T. C. Ry. Co. v. County of Presidio, 53 Texas, 518; Chisholm v. Adams, 71 Texas, 681; Roudanez v. Mayor of New Orleans, 29 La. Ann., 271; Louisville & N. Ry. Co. v. Bate, 22 Fed. Rep., 480; People v. Canal Board of New York, 55 N. Y., 390.

The purpose of the Act is to require the corporations, etc., subject to its provisions, to assess separately their tangible and intangible properties. The Act does not authorize the State Tax Board to assess intangible property or any property, but, on the contrary, expressly requires that this property shall be assessed as all other property is assessed for taxation. It follows, therefore, that the Act is subject to none of the objections taken by appellant and the court properly sustained appellees' general demurrers to the petition. State v. Austin & N. W. Ry. Co., 94 Texas, 530; City of Dallas v. Dallas Street Ry. Co., 95 Texas, 276.

The Act does not transfer to the State Tax Board any of the powers or duties of the assessor of taxes, nor does it in any manner affect the constitutional rights, powers or duties of the assessor of taxes. Rev. Stats., arts. 5123, 5099; Act February 8, 1881, construed in Stone v. Brown, 54 Texas, 339; State v. Farmer, 94 Texas, 235; Black on Interpretation of Laws, pp. 93, 98, 56, 73, 60 and 61.

The Act does not require the State Tax Board to apportion appellants' intangible property among the counties in which it does business on the mileage basis. If the Act does require that the property shall be so apportioned it violates no provision of the Constitution of this

State or of the United States. Pittsburg, etc., Ry. Co. v. Backus, 154 U. S., 430, and cases therein cited.

The Act expressly requires that appellant's intangible property shall be assessed as all other taxable property is assessed, and equalized and taxed as all other property is equalized and taxed, and it therefore violates no provision of the Constitution. The Legislature of the State of Texas has constitutional power to regulate the mode and manner of ascertaining and determining what intangible property, if any, appellant had and possessed on the 1st day of January of this year, for taxation for state and county purposes. Appellant acquired, owns and possesses all of its property subject to the Constitution and laws of this State in relation taxation thereof, and there is no guarantee, constitutional or otherwise, from the State of Texas to the appellant, that its property shall not be ascertained for taxation in such reasonable and lawful manner as the Legislature of the State of Texas may ordain and prescribe. (Const., art. 8.)

The Constitution and statutes of this State require that all property shall be assessed for taxation at its true and full value in money. It does not appear from appellant's petition that there is any practice in the State of Texas, or in any county of the State of Texas, authorizing the assessment of any property for taxation at other than its true and full value in money. If there does exist in the State of Texas a practice such as is alleged with respect to the assessment of property for taxation in violation of law, that is no justification or excuse for the appellant to likewise violate the law in the assessment of its property for taxation, and the Act is not void even if its design is, and its effect will be to require the appellant to assess its intangible property as required by the Constitution and laws of this State. It does not appear that the intangible property of appellant will be assessed by the tax assessors, or equalized by the County Commissioners' Court, at any higher or different percentage of its value than will be assessed and equalized the property of other persons and corporations. Sec. 24, chap. 154, p. 281, Acts 1876; Rev. Stats., 1879, art. 4692; Rev. Stats., 1895, art. 5088; Engelke v. Schlenker, 75 Texas, 559; Albuquerque Bank v. Perea, 147 U. S., 87.

The Intangible Assets Act requires appellant's intangible property to be assessed for taxation as other property is assessed, and it prescribes no fixed or arbitrary rules, nor any rule whatever for the valuation of its property for taxation. The power conferred upon the State Tax Board by the Act violates no provision of the Constitution of the United States or of the State of Texas. State R. R. Tax Cases, 92 U. S., 575; Pittsburg, etc., Ry. Co. v. Backus, 154 U. S., 421.

The Act does not confer or attempt to confer upon the Secretary of State or Comptroller of Public Accounts any powers inconsistent with the Constitution of this State. It does not confer upon either of them any power either legislative or judicial. Arnold v. State, 71 Texas, 239; Stone v. Brown, 54 Texas, 330; Langenberg v. Decker, 31 N. E. (Ind.), 190; Cleveland, etc., Ry. Co. v. Backus, 18 L. R. A. (Ind.), 729; French v. State, 29 L. R. A. (Ind.), 113.

The Legislature of the State of Texas has constitutional power to classify property for the purpose of ascertaining its existence and its

value subject to taxation.    State R. R. Tax Cases, 92 U. S., 610;
Kentucky R. R. Tax Cases, 115 U. S., 337; Florida Cent., etc., Ry. Co.,
v. Reynolds, 183 U. S., 471; King v. Mullins, 171 U. S., 404; Coulter
v. Louisville & N. Ry. Co., 196 U. S., 599; State v. Jones, 51 Ohio
State, 505.

GAINES, Chief Justice.—This suit was brought by the Missouri,
Kansas & Texas Railway Company of Texas against O. K. Shannon,
Secretary of the State of Texas; John W. Stephens, Comptroller, and
W. R. Davie, Tax Commissioner of ·the State, constituting the State
Tax Board, to enjoin them from taking any action under the Act of
the Twenty-ninth Legislature approved April 17, 1905,. commonly known
as the "Intangible Assets Act."    A temporary restraining order was
applied for and was refused.    Upon the hearing an exception to the
jurisdiction of the court was overruled but a demurrer and exceptions
to the merits of the petition were sustained and the plaintiff having
declined to amend the suit was dismissed.    Upon appeal to the Court
of Civil Appeals the decree was affirmed.    The complainant has ap-
plied to this court for a writ of error and it has been granted.

In the Court of Civil Appeals the defendants filed a cross assignment
of error alleging that the court erred in overruling their exception to
the jurisdiction of the court to hear and determine the case.    This
question confronts us at the threshold of the case, and logically is
the first to be decided.    The proposition of defendants in error in
support of their cross assignment is:    "That this is a suit against the
State of Texas."    So far as the question thus presented is affected, we
are unable to distinguish this case from that of Fargo v. Hart (193 ·
U. S., 490).    In that case the suit was to enjoin the Auditor of the
State of Indiana from certifying an assessment for a certain year to
the auditors of the several counties of the State, on the ground as
stated in the opinion that the assessments will result in unconstitutional
interferences with commerce among the States and is also contrary to
the fourteenth amendment to the Constitution of the United States.
The Supreme Court of the United States held that the suit should
have been maintained and the relief granted.    In discussing the ques-
tion of the power of the court to grant an injunction in such case,
Mr. Justice Holmes, speaking for the court, said:    "We do not abate
at all from the strictness of the rule that in general an injunction will
not be granted against the collection of taxes.    (State R. R. Tax
Cases, 92 U. S., 575.)    But it was recognized in the passage just
quoted from The People's National Bank v. Marye, that under the
present circumstances a resort to equity may be proper.    The course
adopted is the same that was taken without criticism from the court
in Adams Express Co. v. Ohio State Auditor, 165 U. S., 194.    It
avoids the necessity of suits against the officers of each of the counties
of the State, and we are of opinion that the bill may be maintained.
(Union Pac. Ry. Co. v. Cheyenne, 113 U. S., 516; Pittsburg, C. C. &
St. L. Ry. v. Board of Public Works, 172 U. S., 32 (193 U. S., 503)."
The quotation referred to above is as follows:    " 'If there was no right
to assess the particular thing at all  .  .  .  an assessment ·under
such circumstances would be void, and, of course, no payment or tender

of any amount would be necessary before seeking an injunction.' (People's Nat. Bank v. Mayre, 191 U. S., 272, 281.)" The intimation is clear, that in a proper case of the character of that referred to a court has power to enjoin a state officer. The suit of Adams Express Co. v. Ohio State Auditor, *supra*, was brought under an Act very similar to the Act in question in this case, as was that of Fargo v. Hart, *supra*. The princip'le, as we understand it, is, that the courts have no power to enjoin the officers of a State from taking action under a statute claimed to be unconstitutional and deemed to be prejudicial to the complainants, unless the officers are about to do some act which, if not authorized by a valid law, constitutes an unlawful interference with their rights. A corollary to the proposition seems to be, that if the proposed acts may subject the complainants to a multiplicity of suits, they may be enjoined. The present case is clearly distinguishable from that of Stephens v. Texas & Pacific Railway Co. (100 Texas, 177). In that case the tax, which was a State tax, was enforceable only by a suit in behalf of the State; and the railroad company had a plain, adequate and complete remedy at law, by showing in defense of the suit the invalidity of the tax as to it.

It is also urged in behalf of the defendants in error, that the suit should proceed no further, because the acts which were sought to be enjoined have already been performed. If the suit were merely to restrain action as to the assessment for the year 1906, a serious question would be here presented; but as we understand the prayer of the petition, it is to enjoin action generally under the statute. Unless enjoined the Taxing Board will doubtless proceed to value the property referred to in the statute for the present and all subsequent years. Therefore we think that it is proper to maintain the suit to forbid future acts under the Act, provided. of course, the Act be invalid for the reasons alleged.

This brings us to the meritorious question in the case. Is the Act in question invalid, either under the Constitution of the State or that of the United States? The alleged grounds upon which the invalidity of the statute is claimed are presented in the able and exhaustive argument for the plaintiff in error; and we will treat them insofar as they require separate discussion as nearly as may conveniently be done in the order in which they are there presented.

The first proposition is that, "The State Tax Board as constituted and organized by the Intangible Assets Act is an illegal body, in that said Act attempts to confer upon the Secretary of State and the Comptroller of Public Accounts, each of whom is an executive officer, powers that are not executive and compels the exercise by them of powers which are not executive but are legislative and judicial in their nature, in violation of section 1, article 2, of the Constitution of the State of Texas." Section 21 of article 4 of our Constitution defines some of the duties of the Secretary of State, but also provides that he shall "perform such other duties as may be required by law." A like provision is found in section 23 of the same article which prescribes the duties of the Comptroller of Public Accounts. But it is insisted as we understand the argument, that no duties can be imposed upon these officers, except such as pertain to the executive department of the government and that the duties imposed by the Act in question are

judicial in their character. The first is probably correct. Since it is declared in section 1 of article 2 of the Constitution, that the powers of the government shall be divided into three distinct departments. namely, the legislative, the judicial and the executive, we are not prepared to hold that the Legislature has the power to devolve upon the Secretary of State and the Comptroller either judicial or legislative functions. It is very clear to our minds that the Act in question does not attempt to confer upon the Tax Board any legislative powers, nor do we understand that such a construction is claimed for it. But it is urged that their powers are judicial in their nature, and that therefore the Act is void. We think the argument is based upon a confusion as to the meaning of the word "judicial." Article 5 of our Constitution provides for the organization of the judicial department of the government. It prescribes what courts shall be established and defines their jurisdiction; names the officers of courts and prescribes their powers; and in every instance save one the province of the courts so provided for is to hear and determine causes between parties affecting the rights of persons as to their life, liberty and property. The exception is the Commissioners' Courts, which are not properly a part of the judicial department. But the whole scope of the article shows clearly what is meant by the judicial department of the government. The word "judicial" is, however, used, not with strict accuracy in another sense. It is applied to the act of an executive officer who in the exercise of his functions is required to pass upon facts and to determine his action by the facts found. This is sometimes called a quasijudicial function. This question came up in the case of Arnold v. The State (71 Texas, 239), and it was there held that the Land Board which was created under the Act of 1883 and which was composed of the Governor, the Attorney-General, the Comptroller, Treasurer and Commissioner of the General Land Office was a lawful body. They were entrusted as a body with the classification, valuation and sale of the public free school and asylum lands. The duties of the Board necessarily required it to inquire into and to determine facts. While the Act was held valid, this question we are now discussing was not alluded to in the opinion, but it is not likely that either the court or the very able and careful judge who spoke for it overlooked the point. The case cited is conclusive of the question here presented.

The next proposition submitted in argument by counsel for plaintiff in error is that "The Act violates those provisions of article 8 of the Constitution of the State of Texas which require that all property of railroad companies shall be assessed and the taxes collected in the several counties in which said property is situated, including so much of the roadbed and fixtures as shall be in each county; that all property, whether owned by persons or corporations, shall be assessed and the taxes paid in the county where situated, and that there shall be elected in each county an assessor of taxes who shall assess such property, the valuation of which shall be equalized by the County Commissioners' Court sitting as a Board of Equalization for purpose of taxation." We understand the provisions referred to to be those found in sections 8, 11 and 14 of the article named. Section 8 is as follows: "All property of railroad companies shall be assessed, and the taxes collected

in the several counties in which said property is situated, including so much of the roadbed and fixtures as shall be in each county. The rolling stock may be assessed in gross in the county where the principal office of the company is located, and the county tax paid upon it shall be apportioned by the Comptroller, in proportion to the distance such road may run through any such county, among the several counties through which the road passes, as a part of their tax assets." Section 11 provides that "All property, whether owned by persons or corporations, shall be assessed for taxation and the taxes paid in the county where situated," etc. Section 14 reads as follows: "There shall be elected by the qualified electors of each county, at the same time and under the same law regulating the election of state and county officers, an assessor of taxes, who shall hold his office for two years and until his successor is elected and qualified."

In the case of the State v. Austin & Northwestern Railroad Co. (94 Texas, 530), it was held, in effect, under the law as it then existed, that what is called in the Act now in question "the intangible assets" of a railway company should be assessed by the county assessors of the respective counties through which the railroad is operated by adding to the value of the tangible property as listed the intangible values thereof. In determining that case it was never for a moment thought that the latter was attempted to be exempted or omitted from the things upon which an ad valorem tax was placed. In that case we said: "The statutes of many of the States impose a tax upon what is called the intangible property of railroad corporations, and various methods have been devised by which the value of such property may be ascertained; and it seems to us that if it had been the purpose of the Legislature to tax this character of property separately from that of the railroad itself, a method would have been provided by which such value should be determined. Unless the property be valued as an entirety, this is the reasonable thing to do. The physical property of a railroad company is of comparatively little value except for the uses for which it is acquired; its socalled intangible property is of no value without the railroad and its equipment." (94 Texas, 532.) We recognized then that the methods of assessing the intangible values of a railroad company provided by the laws then in force was extremely crude and poorly calculated to accomplish the proposed object. In the present law the Legislature has attempted to correct this and to provide a mode by which the intangible values of the line or lines of a railroad company in operation may be assessed as a part of the whole property of a railroad company and apportioned to the respective counties through which such line or lines are located. Is such a provision prohibited by either of the sections of the Constitution hereinbefore quoted? We think not. Section 8 requires all railroad property except the rolling stock to be assessed in the county where situated; and so generally section 11 requires all property to be assessed in the county of its situs. But can it be said that the intangible assets of a railroad company whose lines run through several counties have a situs in each of such counties? The intangible values of a railroad company are the values of the railroad properties above the value of its physical assets which intangible values ordinarily result from the profits of its

business as actually conducted. (State v. Austin & N. W. R. R. Co.,
*supra*.) As said by Mr. Justice Holmes in Fargo v. Hart, *supra*: "The
sleepers and rails of a railroad or the posts and wires of a telegraph
company, are worth more than the prepared wood and the bars of steel
or coils of wire, from their organic connection with other rails or wires
and the rest of the apparatus of a working whole." How then can
this value which proceeds from the working whole of the business, be
held to be situated in a county in which only a part of the physical
properties are located? It is probable that this special matter was not
in the minds of the makers of our Constitution when they framed
article 12. If so, they would probably have made some specific pro-
visions in reference to it as was made in case of the rolling stock. But
that they apprehended that some question of a like character might
arise under the restrictions upon taxation embodied in article 12 of
the Constitution is shown as we think in a subsequent section of that
article, which is as follows: "Section 17. The specification of the
objects and subjects of taxation shall not deprive the Legislature of the
power to require other subjects or objects to be taxed, in such manner
as may be consistent with the principles of taxation fixed in this Con-
stitution." It follows that if, in the case of State v. Austin & North-
western Railroad Company, *supra*, we were mistaken in holding (though
we do not wish to intimate that we were so mistaken) that under the
law as it then was, it was the duty of the county assessors to consider
the property of the railroad company lying in their respective counties
as an operating going concern and, in assessing its value, not to
confine themselves to the value of the physical properties disassociated
from the whole, the section just quoted affords ample authority to the
Legislature to tax such intangible assets as a subject or object of tax-
ation omitted from those specified in the previous sections of the
article.

It is argued that section 14, properly construed, means not only that
there shall be an assessor of taxes elected for each county, but that he
and no other officer shall be entrusted with any part of the duty of
making the assessment. We think the claim is too broad. The section
contains no language which expressly prohibits the appointment of a
board to assess taxes in a particular case. Unlike other provisions of
the Constitution which create offices, it does not define the duties of
the officers, from which we think it is to be inferrred that the scope of
his duties was left to the determination of the Legislature. While
we think, that the Legislature could not strip the assessor of all au-
thority, and probably that it was intended by the framers of the
Constitution that all ordinary assessments of property for taxation
should be made by him, still we think it was not intended to deprive
the Legislature of the power of devolving the duty upon another officer,
or board to assess property in some special cases, where as in the
present instance, the county assessors were clearly unable from the
means at their disposal to ascertain with any reasonable degree of
approximation the value of the intangible assets of the railroad com-
pany, and still less capable of making intelligently the apportionment
due to their respective counties. But it seems to us, that this im-
mediate question is settled by that part of section 1 of article 8 of

the Constitution of this State which reads as follows: "Taxation shall be equal and uniform. All property in this State whether owned by natural persons or corporations other than municipal shall be taxed in proportion to its value, which shall be ascertained as provided by law." Now if it be conceded that it was the intention of the makers of the Constitution to confer upon the county assessors the exclusive power to list and set down the value of all property in their respective counties, subject to an ad valorem tax, it can not be denied that the Legislature is empowered to provide the mode of ascertaining their value.

But it is insisted that the Act in question is repugnant to that provision of the section just quoted which prescribes uniformity and equality of taxation. The Act provides for no change in the rate of taxation as to the property subject to its provisions. Its sole purpose is to ascertain the values of such property. When ascertained the owners of the property pay tax at precisely the same rate as other ad valorem tax payers. All property as appears from numerous provisions on that subject in the Revised Statutes and in subsequent Acts amendatory thereto is to be assessed at its value—meaning by this as appears by some of them, its full and true value. It follows that if the law be properly enforced, the Act imposes upon the intangible assets of the owners of railroads the precise burden that is imposed by other laws upon other property.

The question of the uniformity of the tax is more difficult. In treating of the meaning of the word "uniform" as found in the Constitution of the United States, Mr. Justice Miller in the "Head Money Cases" says: "Perfect uniformity and perfect equality of taxation, in all the aspects in which the human mind can view it, is a baseless dream, as this court has said more than once. State R. R. Tax Cases, 92 U. S., 575, 612." (112 U. S., 595.) In the case cited by that eminent judge the language is "a dream unrealized." The gist of the holding in that case was that a tax was uniform that applied to every part of the United States alike. The case is referred to for the purpose of showing that the courts recognize the impossibility of making taxation absolutely uniform in every respect, and to show the tendency to apply the term in a very restricted sense. Do the words "equal and uniform" in our Constitution merely mean that the taxation must be uniformly equal or do they have a more extended meaning, namely, that the mode of ascertaining the values subject to an ad valorem tax must also be the same. We are of opinion that the provision should not be construed as requiring the same method of ascertaining the value of property for the purpose of taxation. If such be the requirement we have been acting for many years under statutes for the assessment of taxes, recognized by successive Legislatures, which are void, because not in conformity with such requirement. For example, national banks and even railroad corporations have been required to render their property for assessment in a manner different from that of other corporations and natural persons.

The Constitution of Ohio requires property to be taxed "by a uniform rule." A statute of that State commonly known as the "Nichols Law" provided a board composed of the Treasurer, the Attorney-General

and the Auditor of the State, whose duty should be to ascertain the values of express, telephone and telegraph companies doing business in the State and to apportion them to the several counties through which the respective lines of such company operated and to report such values to the auditors of the several counties for assessment. The auditor of Lucas County deeming the Act to be repugnant to the Constitution of the State and that of the United States, refused to apportion the values so certified among the cities, villages, townships and districts of his county; and the members of the board brought a suit in the Supreme Court of the State for a mandamus to compel him to do so. (State v. Jones, 51 Ohio St., 505.) The point was made that the Act was void, because not in conformity to the "Uniform" clause of the Constitution of that State. In deciding the point the court in their opinion say: "It is contended in behalf of the defendant, that the property of the National Express Company is not, under the Act of April 27, 1893, known as the Nichols Law, taxed by a uniform rule; that it is of the same character as the property of individuals, but is valued by a special board, having a peculiar method, and that the Act is in violation of section 2 of article 8 of the Constitution of Ohio, which provides that, "laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise; and also all real and personal property, according to its true value in money." The Constitution thus provides that there shall be equality in the burdens of taxation; and that when the true value of all the property, real and personal, has once been ascertained, the same value shall be subjected to the same burden. Taxation by a uniform rule will require that the rate of taxation shall be uniform, and such uniformity coextensive with the territory to which it applies whether the tax is a state, county, township, or city tax; and that every species of property not exempt from taxation, whether lands, goods, money or choses in action, and however used or employed, shall go upon the tax duplicate at its true value in money. The true value in money is adopted as a standard for taxation—as the basis upon which a uniform rate of taxation is to be fixed. But taxation by a uniform rule does not necessarily demand that there should be the same mode of assessment for every species of property, without regard to any classification. An assessment, in the sense of a valuation of the property of the taxpayer for the purpose of determining the proportion of tax to be paid should, it is true, be uniform in its mode, to the extent that the property is assessed according to its true value in money. But it would not follow that different classes of property may not be valued for taxation by different officers and boards, and by different modes and agencies. The same rigid and inflexible method of assessment for all classes of property might result in a marked inequality in the burden of taxation." The law was held valid. This statute is so identical in effect with the statute of our State, now under consideration, in all particulars which affect the question of the uniformity of taxation, that this decision of the Supreme Court of Ohio, if followed, is decisive of that question. We think the opinion of that court is a correct exposition of the law upon that point and that it should be followed. The Constitution of Ohio presents, as it seems to

us, a much stronger reason for an attack upon the validity of the Act in question in the case last cited than is presented under our Constitution. The Constitution of that State requires taxation to be provided for by "uniform rule"—which seems to point in some degree at least to the procedure in making the assessment. Our Constitution, after declaring that "taxation shall be equal and uniform" and that property shall be taxed in proportion to its value (evidently alluding to ad valorem taxes), adds in the same sentence, "which (value) shall be ascertained as may be prescribed by law." This would seem to leave the Legislature free to adopt the mode of ascertaining the value of any class of property by such method as it might deem best. If such was the intention we think it a wise provision. Property is so various and ascertainment of its value in some cases is so difficult that no mode of such ascertainment absolutely uniform in every respect could effect the important end of equalizing the burden upon all property owners alike.

This proposition is also submitted in argument: "The Intangible Assets Act, in authorizing the State Tax Board to adopt the aggregate market or true value of the stock and bonds of a corporation as the standard or test of the true cash value of the entire property of such corporation and in authorizing the State Tax Board to deduct the assessed value of the physical property from the value of the entire property to arrive at the value of the intangible assets, prescribes artificial and arbitrary rules of value, in violation of the due process provisions of our State Constitution and of the fourteenth amendment to the Federal Constitution and in violation of the equality and uniformity in taxation required by our State Constitution." That the rules prescribed are in a certain sense artificial is not to be denied; for all statutes in that sense are artificial, though many are criticised as being inartificially drawn. We lay that aside. Are the rules arbitrary? We think not. On the contrary we think they are reasonable and well calculated to effect the purpose of the Act. It is true the Taxing Board are required to take certain data furnished them by the companies as a starting point from which to ascertain the true value of the intangible assets of the companies. They are to take the bonded indebtedness of the corporation and to it add the market value of its stock and from it deduct the value of its tangible property as assessed under law and to take the remainder as the value of the intangible properties, unless they conclude that in the particular case this will not result in giving the true value. Is this a reasonable method of accomplishing the object? How would a business man proceed to ascertain the value of a certain piece of real estate which is subject to a mortgage—that is to say, the value of the property as a whole and not the value of the equity of redemption? He would certainly consider that the property is worth the amount of the incumbrance and what it will sell for, subject to that incumbrance. So if a railroad is bonded for $1,000,000 and its shares at their market value are worth $500,000, it is reasonable to suppose, *prima facie,* that the property is worth $1,500,000. But for the reason that the shares in a corporation may have a value above what they would have as a profit paying property and its bonds may exceed its entire value, it would be arbitrary and unreasonable to require the Taxing

Board to fix the sum of the bonds and market value of its shares absolutely as the value. But without entering into a discussion of the provisions of the Act in detail, it is sufficient to say that it makes no such requirement. On the contrary, the rights of the companies are carefully guarded by providing, in effect, that the board may hear evidence and adopt such other method of determining the value of the intangible assets as they may deem just. Similar methods were provided by statute in Ohio for ascertaining the value of the intangible assets of telegraph, telephone and express companies; and in the case of the Adams Express Co. v. Ohio (165 U. S., 194), the Act was held not repugnant to the Constitution of the United States. So in the case of the Express Company v. Indiana (165 U. S., 255), a like statute of Indiana was held valid. We are unable to distinguish the principle announced in those cases from that involved in this. They lead to the conclusion that the Act does not provide an arbitrary method of ascertaining the value of the intangible assets of the corporations subject to its provisions, and that they are not repugnant to the Constitution of the United States for that reason.

Nor do we think the Act by expressly excepting from its operation sleeping car companies, dining car companies and palace car companies or by failing to include other companies not mentioned, unlawfully discriminates against these that are included. It is to be borne in mind that the Act does not exempt any company from paying tax upon the value of its intangible assets, if any; nor does it prescribe a levy of any tax. It merely provides a mode by which the intangible assets of certain companies may be ascertained. When the Legislature concluded that there were corporations in the State who were escaping a part of the just burdens of the state government by not rendering their property for taxation at its true value, as they doubtless did conclude, and when they determined to correct the evil and to prescribe a method by which the whole property of such corporations should be assessed at its true value, then it became appropriate for them to select the classes to which the law should be made applicable. In order properly to perform that duty it became necessary to investigate the facts and to designate such classes. The difference in the character of the property of railroad companies and of sleeping car and dining car companies is so distinct that it is easy to discern a just reason for a discrimination as to them. But we confess our inability to see from the face of the statute any good reason why chair car companies should be included in the Act and sleeping car and dining car companies excluded. But so far as we can see, facts within the knowledge of the Legislature may have existed to justify a discrimination. Unless a corporation have a bonded indebtedness and marketable shares the provisions of the Act are hardly applicable. So that it seems to us that in the absence of facts alleged in the pleadings which attack the validity of the statute and of facts known to us judicially which show a discrimination, we can not assume there were none existing to justify one rule to the companies which were included and another to those which were excluded.

If the companies not included have intangible values, such values are not relieved from taxation. They may have no real estate to which

such values may be attached.  But on the same day this Act was approved there was approved an Act which amended article 5076 of our Revised Statutes.  This is the article which provides for the rendition of property for taxation.  It contains forty-three specifications of different kinds of property subject to be assessed.  The thirty-ninth specification is:  "The value of all property of companies and corporations other than property hereinbefore enumerated;" and the forty-third and last is:  "The value of all property not enumerated above."  It follows that if a company, although it have no real estate, have intangible assets, they may be assessed and valued as provided in the article cited.

That the matter was very carefully considered by the Legislature is shown by the fact that in the Act which was also approved on the same day on which the statute in question was acted on by the Governor, which is commonly known as "the Kennedy Bill" and which provides for the levying and collecting taxes on the gross receipts of certain corporations, companies and individuals, the gross receipts of sleeping car, palace car and dining car companies are taxed together in one section, but separately from all others made subject to the Act and at a higher rate than any other corporation, company or individual. (Laws 1905, p. 359.)

It is also insisted that, by reason of the fact as alleged in the petition, that the county assessors of the respective counties through which the plaintiff's lines are operated habitually assess the properties situate in such county at less than its true value—namely, from one-fourth to two-thirds thereof—the operation of the Act in question will result in unequal taxation.  But we must presume that these officers will do their duty and will obey the law.  If the laws for taxing property be followed, no inequality can result.  If the county assessors persist in assessing the properties in their respective counties at less than their value, it seems the plaintiff company is not without remedy.  (Cummings v. Merchant's Nat. Bank, 101 U. S., 153.)

The last proposition in the argument of the plaintiff in error is:  "Section 12 of the Intangible Assets Act, taken in connection with section 7 of the Act imposing a tax of one percent on the gross incomes of railways, passed at the same session of the Legislature, delegates to the individual taxpayer the right to suspend the operation of a law of the State of Texas producing gross inequality in taxation, and renders the Act under consideration void for lack of certainty."  Section 12 of the Act in question reads as follows:  "That upon the taking effect of this Act, and upon compliance with its provisions by the individuals, companies, corporations and associations hereby affected, and upon the payment of the taxes imposed hereunder, if any are imposed, all laws and parts of laws laying taxes upon the gross receipts of said individuals, companies, corporations and associations, shall be and the same are hereby repealed."  (Laws 1905, p. 356.)  The following is the section of the other Act referred to in the proposition:  "The tax imposed by this Act shall not be levied upon or collected from any person, firm, association, corporation, or receiver owning, operating, managing or controlling any line of railroad in this State after such person, firm, association, corporation or receiver shall have paid the

tax upon its intangible assets as provided for in Act of the Twenty-ninth Legislature entitled 'An Act for the taxation of the intangible assets of certain corporations, and to provide for the creation of a State Tax Board for the valuation of such intangible assets and for the distribution of said valuations for local taxation, and for the assessment of said assets, and the levy and collection of taxes thereon,' while the same may be in force and effect." (Laws 1905, p. 338.) It is insisted that for the reason that these statutes place it in the power of a railroad company to suspend the operation of the occupation tax law, commonly called "the Love Bill" it is prohibited by that provision of our Bill of Rights which declares that "no power of suspending laws in this State shall be exercised except by the Legislature." (Art. 1, sec. 28.) We are of opinion, that the provision does not apply to the matter here in question. The purpose of the Legislature seems to be that the provision of "the Love Bill" which levies an occupation tax upon railroad companies should cease to operate as soon as the requirements of the Intangible Assets Act, commonly known as "the Williams Bill," should be fully performed. To suspend merely means according to Bouvier, "a temporary stop for a time." The suspension of a statute is different from a provision which declares that its operation shall cease at a special time, or upon the happening of a contingency. (Brown v. Barry, 3 Dall., 365.) The purpose of section 28 of article 1 of our State Constitution (quoted above) was to prohibit the Legislature from delegating to its officers the power of suspending the laws, and not to prohibit it from providing that a law may cease wholly to operate upon the happening of an event. A serious question may hereafter arise upon the effect of "the Love Bill," but in our opinion it does not now arise under the Act in question in this case. It is apparent that the Legislature did not intend that the statute, action under which is sought to be enjoined in this case, should cease to have effect at any time.

We are of the opinion that the judgment of the trial court and that of the Court of Civil Appeals should be affirmed, and it is, accordingly, so ordered.

*Affirmed.*