## State of Texas v. Austin & Northwestern Railroad Company.

### No. 970. Decided May 23, 1901.

**1. Railway—Taxation—Franchises.**

Since the real estate ot a railway, including its right of way, road, depots and grounds, etc., is to be valued for taxation "with all the rights and privileges appertaining thereto" (Revised Statutes, article 5062) and with a consideration, as in case of other real property, of its capacity to produce revenue as affecting such value, it was not intended (Revised Statutes, articles 5073, 5082) to tax the franchises of a railroad as a property separate from its real estate. (Pp. 530-532.)

**2. Same.**

The assessment, as personal property of a railroad company, of its "franchise to do and carry on the business of a railroad company as a common carrier of freight and passengers for hire" describes no franchise except that of the right to corporate existence, already taxed by payment to the Secretary of State of a fee for its charter and an annual tax proportionate to its capital stock, and which could have no further taxable value because obtainable by any ten citizens on the same terms. (Pp. 532, 533.)

**3. Same—Personal Property—Enumeration.**

The assessment list of personal property (Revised Statutes, article 5118) whether made by the taxpayer or by the assessor, should specifically enumerate the properties to be assessed and affix thereto the separate value of each. (P. 533.)

**4. Same—Lumping Assessment Held Void.**

Though the franchise of a railway were held to be separately taxable, an assessment of "the intangible personal property of said * * * railway company within the State of Texas, consisting of its rights, privileges, immunities, good will, contracts, and franchise to do and carry on the business of a railroad company as a common carrier of freight and passengers for hire—value of same $835,048," was invalid for failure to value each specific article by itself. (P. 533.)

**5. Same—Vague Description.**

The law does not authorize assessment for taxation by any such vague description of property as "rights, privileges, immunities, good will, contracts, and franchises." (P. 533.)

Application for writ of error to the Court of Civil Appeals for the Third District, in an appeal from Travis County.

*George Calhoun, T. W. Gregory, Fiset & Miller, S. B. Dabney, Lackey & Lewright,* and *C. K. Bell,* Attorney-General, for the application.

GAINES, Chief Justice.—We are of the opinion that the application for the writ of error in this case should be refused.

The trial court held that the franchise of the railroad company, as separate from its tangible property, was not assessable under our statutes, and the Court of Civil Appeals, without passing upon that question, affirmed the judgment upon the ground that the franchise was not properly assessed as a whole in the county of Travis. One of the judges dissented from that conclusion. We do not find it necessary to pass upon the latter question. We are of opinion that it was not the intention of the Legislature to authorize a direct tax upon the franchises of a railroad company as a separate entity from its tangible property.

In reference to the taxation of the property of railroad companies, the Revised Statutes of 1895 contain these provisions:

. "Art. 5073. All railroad, telegraph, plankroad, and turnpike companies shall list all of their real and personal property, giving the number of miles of roadbed and line in the county where such roadbed and line is situated, at the full and true value, except when such company may own personal property or real estate in an unorganized county or district, then they shall list such property to the Comptroller."

"Art. 5082. It shall be the duty of every railroad corporation in this State to deliver a sworn statement, on or before the first day of June of each year, to the assessor of each county and incorporated city or town, into or through which any part of their road may run or in which they own or are in possession of real estate, a classified list of all real estate owned by or in possession of said company in said county, town, or city, specifying—

"1. The whole number of acres of land, lot, or lots, exclusive of their right of way and depot grounds, owned, possessed, or appropriated for their use, with a valuation affixed to the same.

"2. The whole length of the railroad and the value thereof per mile, which valuation shall include right of way, roadbed, superstructure, depots, and grounds upon which said depots are situate, and all shops and fixtures of every kind used in operating said road.

"3. All personal property of whatsoever kind or character, except the rolling stock belonging to the company or in their possession in each respective county, listing and describing the said personal property in the same manner as is now required of citizens of this State."

Article 5062 provides that "Real property, for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all the buildings, structures, and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in anywise appertaining thereto, and all mines, minerals, quarries, and fossils in and under the same."

It seems to us the plain purpose of the article last quoted to require that in assessing real estate for taxation, whether held by a natural person or a corporation, there shall not only be included in the valuation the value of the land itself merely as land together with the improvements thereon, but also all franchises and privileges appurtenant thereto and all the advantages for a profitable prosecution of the business to which it is appropriated. As a rule, the value of improved real estate is proportionate to the net income which it will yield. The value of a railroad is not the mere value of its right of way, roadbed and superstructure, its depot grounds and structures thereon, considered by themselves, but the value of all these as an operating, "going concern,"—this value being in general determinable by the profits which result from its operation. The statute requires all property to be assessed "at its true and full value," and in effect defines that value to be what it would probably sell for at a voluntary sale for

cash. Persons proposing to sell or buy a railroad, in forming their opinion as to its value, would doubtless consider the condition of its physical properties, but would ultimately reach their conclusion upon the question by a careful estimate of the probable net income which its operation will produce. There are no special "rights and privileges belonging to or in anywise appertaining" to the great mass of the real property of the State, such as farming lands and town or city lots, but the terms are applicable to the real estate of railroad companies and suggest the thought that the Legislature had such property in mind when it inserted the provision, and that it was intended that in valuing a railroad for taxation the valuation should include every right and privilege which was exercised in producing its income, and that it was not intended to disassociate the soul from the body of the living concern and value by itself the lifeless remains. If we are correct in this conclusion, then it follows that it was not the intention of the Legislature to tax the franchise of a railroad as a property separate from its real estate. To so tax it would lead to double taxation, which is not permitted.

But there is another consideration which gives strength to our conclusion. The statutes of many of the States impose a tax upon what is called the intangible property of railroad corporations, and various methods have been devised by which the value of such property may be ascertained; and it seems to us that if it had been the purpose of the Legislature to tax this character of property separately from that of the railroad itself, a method would have been provided by which such value should be determined. Unless the property be valued as an entirety, this is the reasonable thing to do. The physical property of a railroad company is of comparatively little value except for the uses for which it is acquired; its so-called intangible property is of no value without the railroad and its equipment.

But article 5082 provides that railroad companies shall list their personal property "in the same manner as is now required of citizens of this State." This provision was not in the original act, but was incorporated by an amendment passed in 1885. Among the personal property required to be listed by article 5118 of the Revised Statutes, we find: "43. Every franchise and the description and value thereof." Franchises are defined to be "special privileges conferred by the government on individuals, and which do not belong to the citizens of the country generally of common right." Peoples Railroad v. Memphis Railroad, 10 Wall., 51. Under this definition, it seems to us that the ordinary franchises of a railroad corporation are the right to exist and to transact business as a corporation, and the right to condemn property for its uses. It would seem, therefore, that if the attempted assessment describes any franchise at all, it is merely the right of corporate existence. For this franchise, every railroad company in this State is required to pay to the Secretary of State a fee for its charter, and annually thereafter a tax proportionate to the amount of its capital stock upon penalty of a forfeiture of corporate existence.

This seems to us clearly a tax upon that franchise. If not, what is the value of such a franchise when any ten persons may, under the general law of the State, procure such a charter by filing with the Secretary of State articles of association, paying a fee therefor, and complying with conditions not onerous in their character?

But there is another ground upon which the assessment in question should clearly be held illegal. The assessment is as follows: "The intangible personal property of the said Austin & Northwestern Railroad Company within the State of Texas, consisting of its right, privileges, immunities, good will, contracts, and franchise to do and carry on the business of a railroad company as a common carrier of freight and passengers for hire—value of same $835,048.00." The one thing specifically mentioned in article 5118, which provides "the manner and form of assessing" taxes, and specified in the attempted assessment, is the franchise. The statute, however, also provides for the assessment of other property not enumerated. But it was clearly the intention of the Legislature to require that the list, whether made by the taxpayer or by the assessor, should specifically enumerate the properties to be assessed and should affix thereto the separate value of each. We have seen that if a franchise is to be assessed, the list must give "the description and value thereof." Conceding, for the argument's sake, that a franchise is described, its value is not separately stated. Rights, privileges, immunities, good will, contracts, and franchises are valued at a lump sum. If taxable at all, each specific article of property of the character in question should be valued by itself. But beyond all this, we know of no law for assessing for taxation, by the vague description given in the assessment before us, rights, privileges, immunities, good will, contracts, and franchises as the property of any individual or corporation.

For the reasons given, the application for the writ of error is refused.