TEXAS CO. v. DAUGHERTY et al.

(Court of Civil Appeals of Texas. Ft. Worth. July 5, 1913. Rehearing Denied Nov. 1, 1913. Additional Conclusions, Nov. 29, 1913.)

1. TAXATION (§ 63*)—PROPERTY SUBJECT—INCORPOREAL RIGHTS.

Under Const. art. 8, § 1, providing that all property shall be taxed in proportion to its value, and Rev. Civ. St. 1911, art. 7503, providing that all property, real, personal, or mixed, except such as may be exempted, is subject to taxation, article 7504, providing that real property, for the purpose of taxation, includes the land and all the buildings, structures, and improvements or other fixtures thereon, and all rights and privileges belonging or in any wise appertaining thereto, and article 7509, providing that every resident shall list all of his real estate, moneys, credits, etc., and all other property for taxation, the rights of the lessee under oil and gas leases, though subject to forfeiture under certain conditions, and though wells have not been drilled, are subject to assessment for taxation against the lessee, separate from the assessment against the owner of the land; such interests constituting rights and privileges belonging or appertaining to the lands within article 7504.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 147; Dec. Dig. § 63.*]

2. TAXATION (§ 47*)—PROPERTY SUBJECT—DOUBLE TAXATION.

Where, in assessing land to the owners for purposes of taxation, the value of the rights held by an oil and gas lessee was not included, the assessment of such rights to the lessee would not result in double taxation.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 104–114; Dec. Dig. § 47.*]

3. TAXATION (§ 611*)—ENJOINING COLLECTION—PARTIES.

The collection of county taxes could not be enjoined in a suit against the tax assessor, tax collector, county judge, and county commissioners, to which the county itself was not a party.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1242, 1245–1257; Dec. Dig. § 611.*]

Conner, C. J., dissenting in part.

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by the Texas Company against W. H. Daugherty and others. From a judgment for defendants, plaintiff appeals. Affirmed.

Mathis & Kay, of Wichita Falls, and R. A. John, of Houston, for appellant. Montgomery & Britain, of Wichita Falls, and B. F. Looney and G. B. Smedley, both of Austin, for appellees.

DUNKLIN, J. The Texas Company, a corporation, with its principal office in Houston, Harris county, owned what are termed oil and gas leases upon certain lands situated in Wichita county. The company instituted this suit to enjoin the tax collector, tax assessor, and the county commissioners of Wichita county from enforcing the collection of county and state taxes which had been assessed against the company upon those leases. The merits of the case were determined by the trial court upon an agreed statement of facts which is hereinafter shown, and, from a judgment denying plaintiff the relief sought, it has appealed.

The agreement of the parties referred to is as follows:

"We, the undersigned attorneys for the plaintiff and the defendants in the above-entitled cause, for the purpose of expediting the trial of the said cause, hereby make and enter into the following agreement, to wit:

"(1) It is hereby agreed: That on January 1, 1912, and at all times thereafter until this date, the plaintiff was the owner of whatever rights, titles, and privileges were granted to or conferred upon it by certain instruments in writing and commonly known as oil and gas leases, all of which instruments had been duly executed by the several owners of the several tracts of land situated in Wichita county, Texas, and described in the plaintiff's petition, and that the several instruments conferring said rights were all in the form as shown by Exhibit A attached to the plaintiff's petition; the blanks in said form being properly filled in each of said instruments so as to show the date, the name of the grantor and grantee, the consideration paid (which was a valuable one), the correct description of the land, and each of them providing for the payment to grantor

of one-eighth of all oil produced and saved on the premises, and each of them also providing for the payment of a sum in cash annually or quarterly for each gas well, and providing for the beginning of a well within a certain time, or the payment of a certain sum in cash in lieu thereof, and that such payments might be made for a term of years, either three, five, or ten years, and containing all the other provisions as indicated in the form of lease attached to the plaintiff's petition and marked Exhibit A, all the blanks in said form being properly filled in each instance. That all of said instruments were duly acknowledged and filed for record in Wichita county, Texas, and each of said instruments, where the same covered a homestead or any part thereof, were properly signed and acknowledged by both the husband and the wife.

"(2) It is admitted and agreed that the plaintiff prior to January 1, 1912, had entered on certain tracts of said land, and had drilled for oil thereon, and had developed the same, and that Exhibit B shows the state of development on each of said tracts of land on the 1st day of January, 1912; that is, the several tracts upon which wells had been bored, and which were producing oil either by pumping or from flowing wells. And it is further agreed that on the 1st day of January, 1912, none of said leases had been by plaintiff abandoned or surrendered, but that all of them were in force.

"(3) It is admitted and agreed that the owners of the fee of all of said lands had rendered said lands for taxes for the year 1912, and that in valuing said lands for tax purposes they had been assessed and valued at the fair market value of the same, subject to all the rights and privileges of the grantee in said oil and gas leases, and that the value of the rights and privileges conferred by said oil and gas leases were not included in the assessed value of the land against the owner of the fee.

"(4) It is admitted that all the formalities of law requisite to the proper assessment of the taxes on said rights and privileges of the plaintiff were complied with; the taxes being duly and regularly entered on assessment blanks by the assessor as unrendered property, that is, said property was assessed against the plaintiff, although the plaintiff had refused to render the same. And it is also admitted that the valuations of said property were duly and legally equalized by the commissioners' court of Wichita county, sitting as a board of equalization, and that said property was, with the values assessed and fixed by said commissioners' court, sitting as a board of equalization, duly entered upon the tax rolls of Wichita county, Texas, for the year 1912, and now appear upon said tax rolls as a charge against the plaintiff.

"(5) It is agreed that the allegations of the first and second paragraphs of the plaintiff's petition are true. It is admitted that the allegations of the third paragraph of the plaintiff's petition are true to this extent: That the leases were not rendered by plaintiff for taxation, and it is admitted that the tax assessor did assess said rights and privileges, if any, held by virtue of said leases, against the plaintiff for the year 1912, and that the said commissioners' court did equalize and fix the value of the same, and ordered the same entered upon the rolls.

"(6) It is further admitted that the amount of taxes assessed against said property was as stated in the fifth paragraph of the plaintiff's petition, to wit, thirty-one hundred thirty and $10/100$ ($3,130.10) dollars.

"(7) It is admitted that the sixth paragraph of the plaintiff's petition properly describes the lands covered by the leases referred to in plaintiff's petition, and shows the acreage and value placed upon said rights of the plaintiff by said commissioners' court.

"(8) It is admitted that the plaintiff never did own the fee in any of the lands described in its petition, but that its rights, if any, in and to such lands or to the use thereof or to any oil or gas that might be produced therefrom were all derived under oil and gas leases substantially in the form as shown by Exhibit A attached to said petition.

"(9) It is admitted that the plaintiff has paid to the tax collector of Wichita county, Texas, all taxes assessed against it upon all property rendered by it for taxes for the year 1912, in Wichita county, Texas.

"(10) It is admitted that the allegations of the ninth paragraph of the plaintiff's petition are true, in so far as it alleged the protest by plaintiff and disregard thereof by the commissioners' court.

"(11) It is further admitted that the plaintiff has paid taxes on all personal property owned by it for the year 1912 that was rendered by it, and upon all personal property owned by it for said year 1912, unless the rights and privileges conferred by said oil and gas leases were personal property; they not having paid any taxes upon any rights or privileges granted or conferred upon it by said oil or gas leases. It is also admitted that the plaintiff has paid taxes upon all oil which it had actually produced and had on hand on January 1, 1912, in Wichita county, Texas; that is, it paid taxes on all oil which it had stored in tanks in Wichita county, Texas, on said date.

"(12) It is admitted that the plaintiff is a private corporation, and that its general and principal office and place of business and domicile was at all times during the year 1912 at Houston, in Harris county, Texas, and that during all of said time it kept its archives, records, documents, files, muniments of title, muniments of rights, licenses, and all of the oil and gas leases for lands in Wichita county, Texas, and including all the

leases involved in this suit, at Houston, in Harris county, Texas. (This admission is intended to cover simply the paper evidence of the leases referred to.)

"(13) It is admitted that the allegations of the twelfth paragraph of the plaintiff's petition are true except the statement as to illegality of the levy and assessment of the leases. It is further agreed that this case shall be submitted to the court upon the foregoing agreement, and that the only question to be determined by the court is the following: 'Were the rights and privileges and interests of the plaintiff, as shown by the foregoing agreement, and which were held by it under and by virtue of the oil leases referred to in the above agreement and by development done pursuant thereto, property, and as such subject to taxation as against the plaintiff in Wichita county, Texas, for the year 1912?' If said question is answered in the negative, the collection of the taxes shall be enjoined as prayed for by the plaintiff; if in the affirmative, then the injunction shall be denied, and judgment shall be rendered by the court in favor of the state of Texas and Wichita county for the amount of taxes as shown in said petition, with ten per cent. penalty for a failure to pay the same by February 1, 1913, and six per cent. interest as authorized by law. If the court should determine that a portion of the property or rights herein referred to were properly taxable in Wichita county, Texas, and that a portion of the same was not so taxable in the county of Wichita, Texas, that then the court shall render judgment for such portion of the taxes, penalty, and interest as may be due on the property which the court finds to be taxable."

Exhibit A made a part of the agreement reads:

"This oil and mineral lease and contract between * * * (hereinafter styled grantor, whether one or more) and * * * (hereinafter styled grantee), witnesseth: That said grantor does hereby grant, bargain, sell, and convey unto the said grantee all of the oil, gas, coal, and other minerals in and under the lands herein described, together with the exclusive right of ingress and egress at all times for the purposes of drilling, mining, and operating for oil, gas, coal, and other minerals, and for conducting all operations, and the erection of appliances and structures in regard thereto, and for laying all pipe lines necessary for the production, mining, storing, and transportation of oil, gas, and other minerals (with privilege of renewing and removing all such structures at will), reserving and securing to the grantor, however, the royalties, payments, and other benefits and advantages hereinafter provided for. And it is agreed that the grantee shall have free use of oil, gas, water, and wood from said lands for all developments and operations thereon; said lands being described as follows: * * * In * * * county, Tex-

as, and being * * * to have and to hold, all and singular, the above-described premises, rights, properties, and privileges, and all such as are hereinafter specified, unto the said grantee, and the heirs, successors, and assigns of such, forever, upon the following terms:

"(1) The considerations of this contract are as follows: (a) The sum of * * * dollars, payment whereof by the grantor is hereby acknowledged; (b) such other payments by the grantee, if any, as may be hereinafter provided for; (c) the royalties hereinafter specified; and (d) the expenditure by the grantee of such sums of money as may have been or may hereafter be made upon the above premises, or upon neighboring lands, planned for the development of mineral resources in such locality, and the payments and expenditures made or that may be made by grantee are considerations not only for the mineral rights in the lands aforesaid, but for all the other privileges granted herein.

"(2) The royalty above mentioned as to oil shall be a quantity equal to * * * of all produced and saved upon the premises the same to be delivered at the well, free of charge to the grantor, or to his credit, in the pipe line to which such wells may be connected.

"(3) The royalty for coal shall be four cents for every ton of the same that is mined and marketed, payable monthly.

"(4) The royalty for natural gas shall be $100.00 per annum for each well from which gas is used off the premises, the grantor to have the privilege, at his own risk and cost, to make connection and use gas free of charge for one dwelling on the premises.

"(5) The royalty for any other minerals discovered shall be one-tenth of the net proceeds arising therefrom while the same are being used off the premises.

"(6) Under penalty of forfeiture of the rights and estates hereby granted, operations for the drilling of a well for oil or gas shall be begun within * * * from the time of final execution and delivery of this contract, and, if so forfeited, the rights and liabilities of both parties shall thereupon be ended. Forfeiture may, however, be saved by the grantee, and the vitality hereof be continued and maintained, notwithstanding operations be not begun within the proper time limit, provided only that for the privilege of delay in such beginning from time to time the grantee may pay, as hereinafter provided, * * * dollars per quarter, for a period not exceeding * * * years from delivery hereof. Operations upon a well begun shall be prosecuted with diligence, unavoidable accidents and contingencies only excepted, and when a well is begun it shall be sunk to a depth of * * * feet, unless oil or gas be sooner developed in paying quantities; but a well which may be lost or spoiled may be continued at another location, and to be considered the same as the

original. After a well is begun, no further payment in respect to delay shall be due, and for every well drilled there shall in all events be secure from forfeiture an area of 200 feet square, with the well in the center, together with * * * acres of land adjoining, said acreage to be precisely designated by the grantee, if the grantor so demands.

"(7) Any payments due or to become due hereunder shall be deemed complete if made or tendered to the grantor, or if deposited or tendered for deposit to the credit of the grantor in the * * * Bank at * * *.

"(8) In case the grantee, or the successors or assigns of such, should sink a well or shaft, and discover either oil, gas, or other minerals within the limits of time, or the extension of such as herein provided for, then this conveyance shall be in full force and effect for twenty years from the discovery of said product, and as much longer as such minerals are produced in paying quantities.

"(9) No well shall be drilled nearer than * * * feet of the house or barn now on said premises, unless by consent of both parties. It is agreed that the grantor is to have the exclusive use of the premises hereinbefore described for all purposes other than above mentioned. When requested, grantee agrees to bury all pipe lines below plow depth, and pay all damages caused to growing crops and fences, when injured by grantee or by employés of such.

"(10) This lease is not intended as a mere franchise, but is intended as a conveyance of the property and privileges above described for the purposes herein mentioned, and it is so understood by all parties hereto.

"(11) It is agreed that this contract and all the terms hereof shall extend to and be binding upon the successors, legal representatives and assigns, and successive assigns, of such parties, respectively."

Upon eight of the leases assessed for taxation no wells had been drilled at the date of the assessment, and the aggregate value at which these leases were assessed was $69,205.25.

In this court, as in the trial court, the only question presented for our determination is that contained in the agreement copied above. Appellant admits that the privileges and interests acquired by virtue of the instruments termed "oil and gas leases" are property, and that the Legislature could, if it saw fit so to do, subject them to taxation, but contends that there is no statute requiring them to be taxed. The following are substantially the contentions urged in appellant's brief:

First. That oil and gas are fugitive substances having no fixed situs in the land, and do not become private property until they are taken from the land and reduced to actual possession, and that from the very nature of the subject-matter the oil or gas leases in question convey to the lessee no title or

estate in the land, but only the right to explore it and extract therefrom the gas and oil there found.

Second. That such right is a chattel real, and not taxed by any of the statutes of this state.

Third. That, if they are taxable at all, they are taxable as personal property only, and that, too, in the county of the domicile of the owner.

Fourth. That the owners of the fee in the lands covered by the leases are taxed upon the entire values of those lands, including the privileges acquired under the leases, and that to tax the leases in addition to the taxes imposed upon the owners of the fee would be double taxation, which is not permissible in the absence of any statute specifically so providing.

Fifth. That the leases in question, and especially those upon lands which have not been exploited for oil or gas, are but conditional options of permits, subject to abandonment or forfeiture upon conditions contained in the leases.

Appellant has cited many authorities, excerpts from many of which appear in the briefs. We will quote a few of these only, as most of the authorities cited announce substantially the same views:

"Oil and gas, while in the earth, unlike solid minerals, are not the subject of ownership distinct from the soil, and the grant of the oil and gas, therefore, is a grant, not of the oil that is in the ground, but of such a part thereof as the grantee may find, and passes nothing which can be the subject of an ejectment or other real action." Watford Oil Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am. St. Rep. 144.

"The grant of oil and gas is a grant of such oil and gas as the grantee may find, and he is not vested with any estate in the oil or gas until it is actually found," since, on account of their wandering nature, and their liability to escape or be withdrawn to other lands, they are not subject to absolute ownership. Poe v. Ulrey, 233 Ill. 56, 84 N. E. 46.

"By the terms of that instrument the lessor granted to the lessee all the oil and gas in and under the land described, 'and also the said tract of land for the purpose of operating thereon for oil and gas.' By a course of decisions it is well settled in West Virginia that a lease of this character is not a grant of property in the oil or in the land, but merely a grant of possession for the purpose of searching for and producing oil." Huggins v. Daley, 99 Fed. 606, 40 C. C. A. 12, 48 L. R. A. 320.

"The law seems to be settled that, under a lease of the nature here in question, title to the oil in place is not in the lessee." The lease, under these decisions, does not have the effect of placing the title of the oil and gas that is under the surface of the land in controversy in the lessee, but is to grant to the lessee the privilege of exploiting for the

oil and gas.. Backer v. Penn Lubricating Oil Co., 162 Fed. 627, 89 C. C. A. 419.

[1] We deem it unnecessary to determine whether the leases in controversy in this case when tested by the common law convey any title in the lands or any title to the oil or gas beneath the surface until the same is severed from the land and reduced to actual possession by the lessee, for, at last, the question to be determined is, as stated in the agreement of the parties copied above, Were the rights, privileges, and interest of the appellant acquired by the leases property, and as such subject to taxation against appellant in Wichita county? If such rights, privileges, and interest are taxable under any statute, they must be taxed, and it matters not how the Legislature has characterized them, whether as real estate or personal property.

Article 8, sec. 1, of the Constitution, reads in part: "All property in this state, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law."

Following are provisions of title 126, c. 11, Revised Civil Statutes 1911:

Article 7503: "All property, real, personal, or mixed, except such as may be hereinafter expressly exempted, is subject to taxation, and the same shall be rendered and listed as herein prescribed."

Article 7504 reads: "Real property, for the purpose of taxation, shall be construed to include the land itself, whether laid out in town lots or otherwise, and all the buildings, structures and improvements, or other fixtures of whatsoever kind thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

Article 7506 provides in part: "The term, 'person,' shall be construed to include firm, company or corporation."

Article 7509 in part reads: "All property shall be listed or rendered in the manner following: 1. Every person of full age and sound mind, being a resident of this state, shall list all of his real estate, moneys, credits, bonds or stock of joint stock or other companies (when the property of such company is not assessed in this state), moneys loaned or invested, annuities, franchises, royalties, and all other property."

Article 7526 provides: "All property of private corporations, except in cases where some other provision is made by law, shall be assessed in the name of the corporation."

In the case of the State of Texas v. Austin & N. W. R. R. Co., 94 Tex. 530, 62 S. W. 1050, our Supreme Court held that the franchise of a railroad company was one of the rights and privileges appertaining to roadbeds and taxable as real estate under article 7504 above quoted. In other words, that in valuing a railroad for taxation the valuation should include every right and privilege which is exercised in producing its income. Even though the reasoning in the decisions of other states might lead to the conclusion that the leases in question under the common law conveyed neither real estate nor personal property, the same could not be given effect by us in view of our statute and this decision by our Supreme Court construing the same. In that case the intangible franchise was taxed separately from the roadbed, and our Supreme Court held that this could not be done, but that it must be taxed as a part of the roadbed. Later the intangible assets statute was passed, permitting a taxation of the intangible franchises of railroad companies separately from the roadbeds. As the rights and privileges conferred by the leases to appellant in this case did not belong to the owner of the fee, necessarily they were taxable against appellant, while the fee was taxable against the owner thereof, for the reason that the statute specifically requires that all property shall be assessed to the owner. Hence the holding by the Supreme Court above mentioned, that the franchise of the railroad company could not be taxed separately from its roadbed, the roadbed and franchise belonging to the same owner, could not be given force in this case without a violation of the express terms of the statute. Clearly the rights acquired by appellant under the leases are at all events "rights and privileges belonging or * * * appertaining" to the lands upon which the leases were given within the meaning of article 7504, and were taxable under that article, and the fact that those rights and privileges were subject to termination under the conditions contained in the leases, we think, would make no difference.

[2] As shown by the agreement, the tax assessor assessed the fee to the owners thereof and the leases separately to appellant, and in assessing the fee to the owners he did not include the values of the franchises held by appellant under the leases which were separately assessed to appellant. It thus appears that there was not a double taxation as contended by appellant.

[3] Independent of the foregoing conclusions, under the pleadings, there is another insurmountable obstacle to a grant of the relief sought by appellant, in this: A portion of the taxes sought to be enjoined were county taxes. Wichita county would be materially affected by a judgment enjoining the collection of the taxes claimed by it, and therefore was a necessary party defendant. But Wichita county was not sued; the tax assessor, tax collector, county judge, and county commissioners being the only defendants. See Bradford v. Westbrook, 39 Tex. Civ. App. 638, 88 S. W. 382; Watkins Land Co. v. Clements, 98 Tex. 578, 86 S. W. 733, 70 L. R. A. 964, 107 Am. St. Rep. 653; Biggs v. Lee, 137 S. W. 138; Renshaw v. Arnett, 158 S. W.

1197 (No. 7773), by this court not yet officially reported

For the reasons indicated, the judgment of the trial court is affirmed.

CONNER, C. J. (dissenting in part). I have been unable to concur with the opinion of the majority in its entirety, but for want of time can only indicate very briefly my diverging view. It is not pretended that there is any iron, coal, or other mineral except oil to which the leases under consideration can relate, and throughout the presentation and consideration of the case the leases have been treated as applying to oil only. So treating the leases, I entertain the view of their legal effect that is contended for by appellant as indicated in the opinion of the majority. In other words, that, as applied to oil, the leases vest in appellant an intangible right or privilege only, which is not taxable apart from the land to which they relate. Such privilege, in my view, by force of the terms of Revised Statutes, art. 7504, is but an appurtenant to the land, which for purposes of taxation is inseparable from it in the absence of a statute otherwise authorizing, and it is not pretended that there is now any such statute. If this view be correct, as seems to be established by the great weight of authority, then the owner of the fee—the land—of right must be taxed for the value of the whole, including the rights and privileges appertaining thereto, and it can make no difference that in the instance before us this was not done. See State of Texas v. A. & N. W. R. R. Co., 94 Tex. 530, 62 S. W. 1050, which it seems to me has a reverse application from that given it by the majority.

### Additional Conclusions.

DUNKLIN, J. That portion of the opinion heretofore rendered in the above-entitled cause, in which we held that Wichita county was a necessary party defendant to the suit, without which the injunction prayed for by appellants, properly, could not be granted, is withdrawn, as that holding was unnecessary to the conclusion we reached that the judgment of the trial court should be affirmed.