**BASHAM v. HOLCOMBE, Mayor, et al.
(No. 8273.)**

(Court of Civil Appeals of Texas. Galveston.
March 15, 1922.)

**1. Appeal and error ⬗954(2) — Refusal of
temporary injunction not interfered with ex-
cept for abuse of discretion.**

The refusal of a temporary injunction will
not be interfered with on appeal unless there
has been an abuse of the broad discretion vest-
ed in the trial court.

**2. Injunction ⬗147—Refusal of temporary in-
junction to restrain execution of contract by
city held not an abuse of discretion in view
of testimony of defendants.**

The refusal of a temporary injunction to re-
strain the execution by a city of a contract for
public improvements because the charter provi-
sions governing the making of such contracts
had not been complied with was not an abuse
of the trial court's discretion, where the of-
ficers of the city testified they had no inten-
tion of making the contract until the charter
requirements had been fully complied with.

**3. Municipal corporations ⬗335(1)—Officials
can accept bid before money is in city treas-
sury, if contract is not made until compliance
with charter requirements.**

The officials of a city can accept a bid for
public improvement work before the required
money to pay for the work is in the city treas-
ury and before a proper ordinance authorizing
the contract has been adopted, provided they
do not enter into the contract until the re-
quirements of the charter have been fully com-
plied with.

**4. Injunction ⬗114(3)—City and contractor
are necessary parties to suit to restrain city
officers from contracting for public improve-
ments.**

In a suit to restrain the officers of a city
from entering into a contract on behalf of the
city for the construction of public improve-
ments, the city and the contractor are neces-
sary parties, since their interests are directly
and vitally affected.

Appeal from District Court, Harris Coun-
ty; Chas. Eashe, Judge.

Suit by Charles S. Basham against Oscar
F. Holcombe, as Mayor, and others. From
a decree dissolving a restraining order and
refusing an application for injunction, plain-
tiff appeals. Affirmed.

C. F. Stevens and Kenneth Krahl, both of
Houston, for appellant.
• Sewall Myer and W. Ray Scruggs, both
of Houston, for appellees.

GRAVES, J. In this petition, Charles S.
Basham, a taxpaying citizen of the city of
Houston, appeals from a decree of the Elev-
enth district court of Harris county dissolv-
ing a restraining order previously issued in
the matter and refusing his application as
such resident for an injunction against the
mayor, the commissioners, and the comptrol-
ler of the city to restrain them from, in their
official capacities, entering into a contract
with Charles K. Horton for the construction
of certain improvements at the city's cotton
shed and wharves adjacent to the Turning
Basin, as well as from paying him anything
for a portion of such work alleged to have
then already been done by him. Neither the
city of Houston nor Mr. Horton had been
made parties to the action.

No brief for appellant has been filed in
this court, but the cause has been heard here-
upon briefs for the appellees, as well as upon
oral and written arguments for both sides.

Appellant's contention that injunction in
the two respects as prayed for should have
been awarded him rests mainly upon these
averments in his application for the writ:

(1) That the mayor and city commissioners
on September 26, 1921, after due advertise-
ment therefor, received competitive bids for
the work, Charles K. Horton's being $114,-
173.20, while his own (appellant's) was only
$113,639.75, which lower amount, in view of
his responsibility and competency to carry
out his undertaking, constituted the most ad-
vantageous bid for the city; that, notwith-
standing this, the officials named, on October
24, 1921, at a time when the comptroller of
the city had not certified that the money req-
uisite for such work was in the city's treas-
ury unappropriated for any other purpose,
and there was in fact no such money in the
treasury, nor had any appropriation been
made therefor, attempted to award the con-
tract to Horton, in violation of section 19a of
article 2 of the charter of the city of Hous-
ton.

(2) That despite the fact that no legal con-
tract had been entered into with him, Charles
K. Horton had prior to that date proceeded
to do part of the work under the purported
contract of October 24, 1921, at an approxi-
mate cost of $10,000, and the city officials
were about to pay him that sum therefor.

The trouble with the position thus taken is
that the facts were not proven as so alleged;
the application setting out these grounds for
the injunctive relief sought was filed Decem-
ber 31, 1921, but the answer of the officials
sued—interposed by way of motion to dis-
solve the restraining order issued by the
court on original presentment to it of the pe-
tition—did not come in until the same day
the judgment vacating this preliminary writ
and refusing the injunction was entered, that
is, on January 7, 1922; in this answer the
city officials, as of that date, denied under
oath that they had made any such contract
on October 24, 1921, or at all, or that they
contemplated making one or paying Charles
K. Horton anything until a legal and valid

⬗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

agreement in all respects as provided by law and ordinance had first been entered into between him and the city of Houston.

The substance of further answering averments was that, if Horton had done any advance work, it was upon his own responsibility without .agreement of any sort from the city; that Basham's bid was not in fact the lowest and best one, in that the basis on which the bids were called for and received was upon all work exclusive of general excavation, and, when all bids entered were considered upon that basis, Horton's was the lowest; that on receiving the several bids made the city council had carefully considered them all, and had in good faith exercised its discretion in then voting that the contract be awarded to Horton for the reason that his was in reality not only the lowest but the best bid for the city, he being, in the council's judgment, in point of equipment and experience in better position than the other bidders to promptly and satisfactorily complete the work; that subsequently, on January 3, 1922, the comptroller had certified to the council that the necessary money for this work was then in the treasury unappropriated to any other purpose; and that, thereupon, the city council had on the same day passed an ordinance authorizing and instructing the mayor to enter into a contract with Charles K. Horton, pursuant to the prior acceptance of his bid.

Expression of the city's intention—unless enjoined in this cause—to sign the contract as thus authorized, and, on the completion of the work as therein specified by Horton, to pay him the agreed price therefor, was then specifically stated.

The answer thus contained full denial under oath of all material allegations of the bill of plaintiff below. Before entering the judgment complained of, the trial court, on the same day, January 7, 1922, heard the evidence which was sufficient to support, among others not deemed material, these findings: (1) That, after having properly received bids for the work, the city council, on October 24, 1921, passed a motion accepting Horton's bid and instructing the city attorney to draw the necessary ordinance as provided by charter; (2) it being then ascertained that there was not sufficient money in the city's treasury available for this work, the passing of the necessary ordinance and awarding the contract to Horton was held in abeyance until there were such funds; (3) that the requisite funds became available, and the comptroller duly so certified on January 3, 1922, whereupon an ordinance was passed appropriating money for the work, formally awarding the contract to Horton, and directing the mayor to execute it on the prescribed requisites being complied with; (4) that no such contract had been executed on the part of the city at the time of this judgment below, and the city officials as witnesses then assured the court that none would be until this suit was disposed of; (5) that the city, council, acting in good faith and in the proper exercise of its .official discretion, had, before directing the award of the contract to Horton, determined that his bid was the lowest secure bid for the work and the one of most advantage to the city, regard being had to the basis on which the bids were submitted; (6) that while Horton had between September 27, 1921, and January 7, 1922, done certain excavation work and assembled certain materials for use in the construction of these improvements, he had done so on his own responsibility and without any contract, agreement, or understanding of any kind on the part of the city of Houston.

Such was the status of this matter when the trial court heard the cause and refused the injunction prayed for on January 7, 1922.

It seems that this ordinance of January 3, 1922, under recitation therein of there being a public emergency requiring it, was both passed finally and approved on the date of its introduction; but, while the record as brought .up here does not show any subsequent proceedings relating to it, the leading counsel for the appellees, in oral argument before this court, made assurance that no contract with Mr. Horton had been executed by the city under that ordinance, that it had been set aside and in lieu thereof, as authority for the contemplated contract, another ordinance had been passed which was, or would be, read in full at three regular meetings of the council, pursuant to article 2, § 9, of the Houston city charter, requiring that procedure for ·appropriations involving more than $1,000.

[1, 2] The action of a trial court in granting or refusing a temporary injunction will not be interfered with on appeal unless there has been an abuse of its broad discretion (Sutherland v. City [Tex. Civ. App.] 225 S. W. 63; Electric Co. v. City [Tex. Civ. App.] 212 S. W. 198), and we are unable ·to hold that any such result appears in this instance. If, as the mayor and other city officials testified, no contract had actually been made at the time of this hearing and none was contemplated until all the provisions of the charter—including the one requiring the reading in full of the supporting ordinance at three regular council meetings—had been complied with, it follows that nothing in derogation of the charter, or otherwise illegal, was involved. At any rate, the court necessarily so found, and, as the appeal is presented here, there is nothing pointed out on which this court could reach a contrary conclusion.

It goes without saying that a judgment of affirmance in these circumstances would in no wise be binding upon or prevent appellant from complaining should the appellees, · subsequent to the trial court's order, enter

into the contract in question without having the necessary ordinance read in full at three regular meetings.

[3] Since no fraud or bad faith on the part of the officials moved against was either alleged or proven, and no provisions of the controlling authority, the city charter, are shown to have been violated, the most that can be said of the entire course of the transaction is that the council accepted the bid of Horton on October 24, 1921, and then held in abeyance the making of a contract with him until that could be done in full compliance with the charter provisions. We know of no valid reason for holding that this could not be done, when the charter nowhere prescribes the time within which contracts must be let after bids are received, but otherwise, by section 2 of article 2, confers powers upon the council in matters of this sort so broad as to be limited only by the provisions of that instrument itself, and those of the state Constitution.

[4] For an additional reason the trial court's refusal of the injunction must be sustained; although the suit was an effort to restrain the officials of the city from making a contract on its behalf with, and from paying out its money to, a designated person, neither the city itself nor the person affected were made parties, as has been before stated. Under well-settled authority, both were necessary parties to a proceeding so directly and vitally affecting their interests. Eames v. Kellar, 102 App. Div. 207, 92 N. Y. Supp. 665; Renshaw v. Arnett (Tex. Civ. App.) 158 S. W. 1197; Texas Co. v. Daugherty (Tex. Civ. App.) 160 S. W. 129; Moore v. Held, 73 Iowa, 538, 35 N. W. 623; Turner v. Cruzen, 70 Iowa, 202, 30 N. W. 483; Bradford v. Westbrook, 39 Tex. Civ. App. 638, 88 S. W. 382; Pendleton v. Ferguson, 99 Tex. 296, 89 S. W. 758; Ramsay v. Marble Rock, 123 Iowa, 7, 98 N. W. 134.

The judgment has been ordered affirmed.

Affirmed.