### BROWN COUNTY, TEX., et al. v. ATLANTIC PIPE LINE CO.

#### No. 8092.

Circuit Court of Appeals, Fifth Circuit.

July 16, 1937.

Rehearing Denied Aug. 13, 1937.

William McCraw, Atty. Gen. of Tex., H. Grady Chandler, Asst. Atty. Gen., of Tex., and William N. Sands, of Austin, Tex., for appellants.

Thomas R. Freeman, of Dallas, Tex., Harry C. Weeks, of Fort Worth, Tex., and Charles I. Francis, of Houston, Tex., for appellee.

Before FOSTER and SIBLEY, Circuit Judges, and HOLLAND, District Judge.

SIBLEY, Circuit Judge.

The taxes assessed in Brown County, Texas, for the year 1934 against Atlantic Pipe Line Company included a value of $88,400 fixed by the county officers for the physical property located in the county, and a value of $161,720 fixed by the State Board as Brown County's part of $6,620,-200 of "intangible assets and property" owned in the State of Texas by the Pipe Line Company. The Pipe Line Company on a bill against Brown County and its tax officers sought to enjoin the collection of the whole tax on the grounds principally that the law creating the State Tax Board and establishing its functions (Vernon's Ann.Civ.St.Tex. art. 7098 et seq.) was unconstitutional and void; that the board had acted arbitrarily and fraudulently, or at least illegally, both in fixing the intangible value and in apportioning the part to Brown County; and that Brown County and its officers purposely and consistently failed and refused to include the intangible assets of other taxpayers in the county and thus discriminated against the Pipe Line Company so as to make the tax assessed against it void. On the last ground, the others not being distinctly passed on, the District Court made a final decree enjoining so much of the tax as was attributable to the intangible value fixed by the State Tax Board on condition that the remainder of the tax be paid. The condition was fulfilled, and the injunction was made absolute. Brown County and its officers appeal, assigning as error among other things that the court did not dismiss on motion that part of the bill which attacked the motives and the acts of the State Tax Board, since neither it nor its members are parties; and that the court held there was discrimination by valuing the intangible assets of the Pipe Line Company but not valuing those of other taxpayers. The Pipe Line Company took no appeal, though it argues here that the District Court should have held the statute establishing the State Tax Board unconstitutional, as the bill asserts it to be, under the due process and equal protection clauses of the Fourteenth Amendment, and under named sections of the State Constitution.

The contentions will be clarified by a brief statement of the legal history. The Texas Constitution, article 8, § 1, provides: "Taxation shall be equal and uniform. All property in this State, whether owned by natural persons or corporations, other than municipal, shall be taxed in proportion to its value, which shall be ascertained as may be provided by law." Section 8 provides as to railroads that the roadbed and fixtures shall be taxed in each county, and the rolling stock shall be apportioned according to the distance the road runs through each county. Section 11 in part is: "All property, whether owned by persons or corporations shall be assessed for taxation, and the taxes paid in the county where situated." Section 18 directs the Legislature to provide for a just equalization of assessments, mentioning parenthetically that the county commissioners' court is to constitute a board of equalization. The fact was early recognized that organized property, especially that doing a quasi monopolistic business like a railroad, had a value in excess of its original or reproduction cost which along with other intangible property ought to be taxed. An effort was at first made to assess a railroad company's franchise and other intangible values in the county of its home office. The Supreme Court held that the Constitution and laws of Texas taxed the land of all persons, natural or corporate, on a basis not merely of its value as land

with the improvements, but also as enhanced by franchises and privileges appurtenant thereto, and all the advantages it possesses for a profitable prosecution of the business to which it is appropriated. These appurtenant values were held to be situated where the physical property was located and to be there proportionally taxed rather than at the home office. State v. Austin & N. W. Ry. Co., 94 Tex. 530, 62 S.W. 1050. Thereafter in 1905, no doubt to facilitate both the assessment and the apportionment of these intangible values, the Legislature created the State Tax Board, giving it the duty and authority to require returns and information from railroad, bridge, ferry, and toll companies, and to fix the value of the "intangible assets and property" in excess of the ordinary values as physical property in the several counties, and to apportion that value and certify it to the authorities of each county concerned, who should have no power to change it but should add the values so certified to the physical values found by them in their respective counties. The companies were required to give the State Tax Board information both as to the true value and the assessed value of their physical properties in each county. The constitutional validity of the legislation was sustained in Missouri, K. & T. R. R. Co. v. Shannon, 100 Tex. 379, 100 S.W. 138, 10 L.R.A.(N.S.) 681, and Lively v. Missouri, K. & T. R. R. Co., 102 Tex. 545, 120 S.W. 852; and Druesdow v. Baker (Tex.Com.App.) 229 S.W. 493, on certiorari 263 U.S. 137, 44 S.Ct. 40, 68 L. Ed. 212. In 1933 the statute was extended to include every "oil pipe line company and all common carrier pipe line companies of every character whatsoever."

The appellee Atlantic Pipe Line Company, a corporation of the State of Maine, operating, as a common carrier of oil, four pipe lines in Texas, was in 1934 called on by the State Tax Board for information, and was notified of a tentative valuation of its intangible assets. The board entertained a protest as provided by the statute, and reduced the intangible value after a hearing from $8,010,677 to $6,620,200, and prorated that value on a mileage basis among forty-four counties traversed by the pipe lines, certifying to Brown county $161,720 as its share. These figures represented 48 per cent. of the full value assessed by the State Tax Board thus reduced because it found that to be the average practice in the counties concerned.

This certification is attacked in the present suit.

In 1935 the Atlantic Pipe Line Company, before the State Tax Board had made its certification for that year, brought a bill in the District Court of the United States against the State Tax Board to restrain them on grounds which included an attack on the state law for conflict with the Federal Constitution. Since state officers were involved, the case was heard by three judges, who sustained the validity of the law as applied to pipe line companies and refused an injunction partly because the complainant could better make its point of discrimination in the counties when the taxes should be assessed there. Atlantic Pipe Line Co. v. State Tax Board (D.C.) 12 F.Supp. 265.

In the present case we have first to settle what questions are open to decision on this appeal, seeing that the county and the county officers and not the state officers are proceeded against, and. that the complainant, successful below, has itself taken no appeal. The question whether the county officers had intentionally and consistently refused to assess other taxpayers similarly situated with respect to the intangible values of their properties so as to make an unconstitutional discrimination against the complainant is of course open to review, being the question which the lower court decided against appellants. We think also the question of the constitutionality of the law under which the State Tax Board certified the intangible values is before us, for if there is no law authorizing the certificate a tax assessed on it is manifestly illegal, and this would be a good reason in law for sustaining the injunction, although it is not the one assigned by the court granting it. If the court had decided some issue of fact favorably to Brown County, no doubt a cross-appeal would have been necessary to review it, for the statement of evidence on appeal is by the rules adjusted to the assignments of error filed by the appellant. But we hold that that portion of the petition and the evidence which relates to the method pursued by the State Tax Board in reaching its valuation and in apportioning it to the several counties ought not to have been considered in the court below and will not be here, because the board and its members are not parties to explain and defend their proceedings and to represent all the counties interested in the apportionment. If they acted with juris-

diction and under authority of law after a full hearing their action is quasi judicial, or at all events is administratively final, and not to be collaterally attacked for a mere error of law or fact. Glenn v. Dallas County Dist. (Tex.Civ.App.) 282 S. W. 339; Stanley v. Board of Supervisors, 121 U.S. 535, 7 S.Ct. 1234, 30 L.Ed. 1000. That their action is alleged to be fraudulent as well as erroneous is no reason for hearing the attack in their absence, but more strongly demands their presence as parties. We shall therefore assume that the intangible value certified by the board is correct in amount and in apportionment, and will examine only the law giving them authority.

 The constitutional validity of the act establishing the State Tax Board with reference both to the State and Federal Constitutions we think sufficiently established by the cases already referred to. The matter has recently been reviewed at the instance of a pipe line company with the same result. Texas Pipe Line Co. v. Anderson (Tex.Civ.App.) 100 S.W.(2d) 754. As respects the Texas Constitution, the reasoning is that all property is to be taxed at its fair value, meaning fair market value if the property is such as is bought and sold, and fair estimated value if otherwise, and the taxation of all taxpayers is to include intangible property such as privileges and franchises, stocks, bonds, and other choses in action which may be independent of other property, and also franchises, easements, and value due to organization and business use, which are appurtenant to property and enhance it. All persons, whether natural or artificial, owe taxes accordingly. The intangible properties and intangible values are generally assessed in the county where the property is situated, either physically or by common or statutory law. It is competent for the Legislature to change the common-law situs of intangibles and to classify common carriers such as railroad, bridge, ferry, toll road, and pipe line companies for separate treatment in valuing and apportioning their intangibles and equalizing the assessment thereof. The Fourteenth Amendment does not prevent such classifications for taxation. The law is not in conflict with state or federal constitutional provisions.

 The complaint itself shows that for five years before 1934 the Atlantic's pipe lines, operating on charges fixed by the Texas Railroad Commission, had each year earned net, after federal income taxes were allowed for, more than two and a half million dollars, and will not greatly exhaust the oil fields served for eleven years to come even if new supplies of oil are not discovered. We are told that the original investment in them has been during the five years more than returned in dividends. It is evident that this property has by reason of its location and earning power a value very much greater than the aggregated depreciated cost or the physical value of its constituent elements in each county. The additional "intangible value" may be about twice as great as the physical, as is indicated by comparing $161,720 certified for Brown County for the former value with the $88,460 fixed for the latter value and found fair by the court. Both values are reduced from the full fair values assessed, the former by 52 per cent. and the latter by 50 per cent., because both the State Tax Board and the county officials recognize that systematically such reduction is practiced in Brown County and the state generally. The Atlantic Pipe Line Company is by this injunction relieved of nearly two-thirds of its taxes because of a finding, not concurred in by the State Tax Board or the county authorities, that intangible values appurtenant to the property of others go systematically untaxed. If indeed this be true, all the railroad, bridge, and ferry companies, and all other pipe line companies, ought to be similarly relieved, and every other propertyowner whose property has been assessed at more because of its profitable use. We think the evidence in this case leads to no such conclusion. The county tax officials, both the assessors and equalizers, were all sworn and testified to endeavoring so far as they could to obtain information and to put all property and all its elements of value on the tax books. They stated that the great bulk of the county's real estate, whether farms or city property, had no special intangible value, but was just land and buildings worth more or less according to location. It is testified that a city building which rents readily and whose rents are relatively high would be assessed for more than a similar building where the reverse is true. So a factory which by location and the character of its business is prospering is more valuable than one in different circumstances. The stocks of merchants have an ascertainable

market value; the merchant's profits if unusual are due more to his skill and management than to any latent value appurtenant to his goods. So the lawyer's library is not increased in value because of the success of its owner in his profession, because he and not it really produces the income. The failure to assess intangible value appurtenant to such properties shows no discrimination. The properties of the telegraph and telephone companies 'assessed in the county are more like those of the Pipe Line Comapny. They are not subjected to the elaborate analysis used by the State Tax Board, but the local officers say they endeavor to value the properties fully, taking into consideration whether they are money-makers or not. The newspaper whose plant was assessed apparently without intangible value added is of no weight as an instance, because it had made no money for several years, although its owner still thought its goodwill valuable. Banks, of course, are specially taxed on their stocks, the value of which includes every value. Their real estate consequently ought not to have intangible value added as arising from successful business, but if any is added it makes no difference because the assessed value of the real estate is deducted from the whole value of the stocks. A failure to get full return of choses in action is shown to obtain in Brown County as it probably does in the greater part of the country, but it does not result from intentional act or omission of the tax officers, and does not nullify all tax assessments where it happens. The fact that the county valuations do not 'separately state intangible value appurtenant to property when it exists does not establish that such values have not been included as the law requires. They may be unconsciously included wherever property is valued high because of its especially profitable business uses. Market value of marketable property generally includes them. It may be that the State Tax Board is with the machinery at its command more diligent and more drastic in fixing intangible values than the county assessors and equalizers have been, but we do not think an intentional and systematic discrimination is shown to have been practiced by the latter such as to nullify the work of the former. Errors of judgment and oversights do not suffice. Phillips Petroleum Co. v. Townsend, (C.C.A.) 63 F.(2d) 293, and cases cited. On the whole, we think no such clear case of discrimination is made as would warrant a federal court in interfering by injunction.

The judgment is reversed, with costs, and with direction to dismiss the bill.